CATHERINE E. MORENO, State Bar No. 264517
BETTY CHANG ROWE, State Bar No. 214068
DYLAN G. SAVAGE, State Bar No. 310452
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100
Email: cmoreno@wsgr.com
        browe@wsgr.com
        dsavage@wsgr.com

GREGORY L. WATTS, State Bar No. 197126
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Facsimile:  (206) 883-2699
Email: gwatts@wsgr.com

*Attorneys for Defendants eHealth Inc.,
Scott N. Flanders, and Derek N. Yung*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE eHEALTH, INC. SECURITIES LITIGATION | CASE NO.:  4:20-cv-02395-JST |
| | **DEFENDANTS eHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c)** |
| | Hearing Date:  February 23, 2023 |
| | Time:  2:00 p.m. |
| | Courtroom:  6 |
| | Honorable Jon S. Tigar |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................................1

STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3)).........................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

I. INTRODUCTION...................................................................................................1

II. STATEMENT OF FACTS.......................................................................................4

III. ARGUMENT ..........................................................................................................7

    A. STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS ...........7

    B. THE COMPLAINT FAILS TO PLEAD THAT THE APRIL 26, 2018 OR FEBRUARY 20, 2020 STATEMENTS WERE FALSE OR MISLEADING........8

        1. Defendants Disclosed eHealth's Operational Expenses, Including Customer Care and Enrollment, During the April 2018 and February 2020 Earnings Calls, and in SEC Filings Referenced in Those Earnings Calls ...................................................................................8

        2. The Complaint Fails to Allege Facts Showing That eHealth Incurred Material Post-Enrollment Retention Expenses .........................................11

        3. The Statements Were Not Misleading Because They Were Made From an Accounting Perspective in the Context of ASC 606 and Revenue Recognition ...............................................................................11

    C. THE COMPLAINT FAILS TO ALLEGE SCIENTER IN CONNECTION WITH THE APRIL 26, 2018 AND FEBRUARY 20, 2020 STATEMENTS ......14

    D. THE COMPLAINT FAILS TO ALLEGE LOSS CAUSATION ........................17

    E. THE SECTION 20(a) CLAIM ALSO FAILS .......................................................18

IV. CONCLUSION ......................................................................................................18

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................................10

*Brody v. Transitional Hosp. Corp.*,
280 F.3d 997 (9th Cir. 2002) .............................................................................................9

*Burnett v. Rowzee*,
2007 WL 4754539 (C.D. Cal. Oct. 18, 2007) ..................................................................16

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012) ...........................................................................................7

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2019) ......................................................................................11, 18

*DeMaria v. Andersen*,
318 F.3d 170 (2d Cir. 2003) ..............................................................................................9

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ..........................................................................................................17

*Dworkin v. Hustler Magazine Inc.*,
867 F.2d 1188 (9th Cir. 1989) ...........................................................................................7

*In re Bofl Holdings, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ...........................................................................................17

*In re Edward D. Jones & Co., L.P. Sec. Litig.*,
2019 WL 2994486 (E.D. Cal. July 9, 2019) ....................................................................17

*In re Fusion-io, Inc. Sec. Litig.*,
2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ....................................................................14

*In re Nektar Therapeutics*,
2020 WL 3962004 (N.D. Cal. July 13, 2020), *aff'd*, 34 F.4th 828 (9th Cir.
2022) ..................................................................................................................................16

*In re Rigel Pharm.s, Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ......................................................................................15, 16

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ...........................................................................................11

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) .............................................................................................9

*In re Twitter, Inc. Sec. Litig.*,
    506 F. Supp. 3d 867 (N.D. Cal. 2020), *aff'd sub nom. Weston Family
    Partnership LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022) ............................... 11, 15

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002), *abrogated on other grounds as recognized in
    South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) .................................... 15

*In re Verisign Corp. Sec. Litig.*,
    2005 WL 2893783 (N.D. Cal. Nov. 2, 2005) ........................................................................ 7

*In re XenoPort, Inc. Sec. Litig.*,
    2011 WL 6153134 (N.D. Cal. Dec. 12, 2011) .................................................................... 16

*Knox v. Yingli Green Energy Holding Co.*,
    2016 WL 6609210 (C.D. Cal. May 10, 2016)..................................................................... 16

*Landmark Equity Fund, II, LLC v. Arias*,
    2015 WL 5882321 (E.D. Cal. Oct. 5, 2015) ........................................................................ 7

*Lipton v. PathoGensis Corp.*,
    284 F.3d 1027 (9th Cir. 2002)............................................................................................. 18

*Lu v. Align Tech., Inc.*,
    417 F. Supp. 3d 1266 (N.D. Cal. 2019) .............................................................................. 14

*McGovney v. Aerohive Networks, Inc.*,
    367 F. Supp. 3d 1038 (N.D. Cal. 2019) .............................................................................. 11

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008)............................................................................................. 15

*Nelson v. City of Irvine*,
    143 F.3d 1196 (9th Cir. 1998).............................................................................................. 7

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020)............................................................................................... 14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ............................................................................................................. 9

*Oregon Public Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014)......................................................................................... 10, 17

*Par Investment Partners, LP v. Aruba Networks, Inc.*,
    681 F. App'x 618 (9th Cir. 2017)........................................................................................ 10

*S.E.C. v. Lucent Technologies, Inc.*,
    610 F. Supp. 2d 342 (D.N.J. 2009) ..................................................................................... 16

*Schueneman v. Arena Pharm., Inc.*,
    840 F.3d 698 (9th Cir. 2016)............................................................................................... 14

*Summit Media LLC v. City of Los Angeles*,
    530 F. Supp. 2d 1084 (C.D. Cal. 2008)................................................................................ 7

DEFENDANTS' RULE 12(C) MOTION                    -iii-
CASE NO. 4:20-CV-02395-JST

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................ 14, 15

*United States v. 14.02 Acres of Land More or Less in Fresno County*,
    547 F.3d 943 (9th Cir. 2008) ......................................................................... 7

*Valiente v. Swift Transp. Co. of Arizona, LLC*,
    2020 WL 8812885 (C.D. Cal. Apr. 24, 2020) ................................................ 7

*Waterford Township Police v. Mattel, Inc.*,
    321 F. Supp. 3d 1133 (C.D. Cal. 2018), *aff'd sub nom. Castro v. Mattel,
    Inc.*, 794 F. App'x 669 (9th Cir. 2020) ........................................................ 16

*West v. eHealth, Inc.*,
    2016 WL 948116 (N.D. Cal. Mar. 14, 2016) ................................................ 14

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................. 14, 16

**STATUTES**

15 U.S.C. § 78u-4(b)(2)(A) ................................................................................. 14

**RULES**

Fed. R. Civ. P. 1 ................................................................................................... 4

Fed. R. Evid. 201 ................................................................................................. 7

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on February 23, 2023 at 2:00 p.m., before The Honorable Jon S. Tigar, United States District Court, Oakland Courthouse, Courtroom 6, 2nd Floor, at 1301 Clay Street, Oakland, California, Defendants eHealth, Inc. ("eHealth" or the "Company"), Scott N. Flanders, and Derek N. Yung (collectively, "Defendants") will move for an order entering judgment on the pleadings that, as a matter of law, Plaintiff's Amended Complaint ("Complaint" or "¶"), as supplemented by Lead Plaintiff Chicago & Vicinity Laborers' District Pension Fund (the "Fund" or "Plaintiff") on November 29, 2022, fails to state a claim, pursuant to the Private Securities Litigation Reform Act of 1995 ("Reform Act"), 15 U.S.C. § 78u-4(a) *et seq.*, and Fed. R. Civ. P. 9(b) and 12(c). This Motion is based on this Notice of Motion and Motion; Defendants' Memorandum of Points and Authorities, incorporated herein; Defendants' Request for Judicial Notice; the Declaration of Betty Chang Rowe ("Rowe Decl.") and accompanying exhibits ("Ex."); and other matters before the Court.

**STATEMENT OF ISSUES (CIVIL L.R. 7-4(a)(3))**

Whether the allegations in the Complaint that survived the Court's Rule 12(b)(6) dismissal order state a claim for violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On August 12, 2021, this Court entered an order granting in part and denying in part Defendants' Rule 12(b)(6) motion to dismiss the Complaint. ECF No. 64 ("MTD Order"). In the MTD Order, the Court dismissed seven of the ten statements alleged in the Complaint to have been materially false or misleading. *Id.* at 6-14 & n.6. The Court dismissed all claims predicated on challenged statements that allegedly "concealed increased churn" (or member attrition), *id.* at 6-10, 12-14,[1] and all claims alleging the Company's reported revenue and profit were artificially

---

[1] The Court dismissed all claims regarding a statement in eHealth's August 7, 2018 10-Q, MTD at 6-8, two statements made by certain defendants during a February 21, 2019 earnings call, *id.* at 8-9, a statement made in eHealth's August 8, 2019 10-Q, *id.* at 9-10, and two statements made during an April 23, 2020 earnings call, *id.* at 12-14.

inflated, and therefore false and misleading, due to the use of an incorrect estimated lifetime value ("LTV") that ignored churn, *id*. at 10-11.[2]  The Court dismissed these claims both for failure to plead a material misstatement or omission and for failure to plead a strong inference of scienter. *Id*. at 6-14 & n.6.  These alleged misstatements and claims were dismissed with prejudice thirty days after the MTD Order.  *Id*. at 21-22.

In its MTD Order, the Court did not dismiss three statements alleged in the Complaint to have been materially false or misleading.  *Id*. at 14-17, 19-20.  These statements, made during earnings calls on April 26, 2018 and February 20, 2020 (the "Statements"), are alleged to have created a misimpression that eHealth does not incur operational costs in providing customer care to existing members, *i.e.*, individuals already enrolled in a policy, for the purpose of customer retention.  ¶¶ 74-76, 90-93.  The Court explained that it could not dismiss the Statements because (1) while eHealth "disclosed its operational expenses in SEC filings" (MTD Order at 16), the challenged statements "were made *during an earnings call* and without any reference to any SEC filings in which Defendants disclosed operational expenses," *id.*, and (2) "Defendants … have not pointed to any material that the Court can consider … that would allow the Court to infer that" the remaining statements "were made in the context of the mechanics of revenue recognition under ASC 606." *Id*. at 15.

It is clear from the MTD Order that if the Court had been provided with judicially noticeable or incorporated by reference material showing that the earnings calls referenced SEC filings in which operational expenses, including customer care expenses, were disclosed and that the Statements were made in the context of ASC 606 revenue recognition, the Court was prepared to consider and potentially dismiss these Statements, as it did the churn statements.  The entirety of these materials were not submitted to, or considered by, the Court in connection with Defendants' Rule 12(b)(6) motion since that motion was focused on the gravamen of the Complaint – membership churn and churn-related LTV estimates that impact revenue recognition

---

[2] The Court dismissed all claims regarding statements in the Company's March 2, 2020 10-K for FY19.  MTD Order at 10-11.

DEFENDANTS' RULE 12(C) MOTION
CASE NO. 4:20-CV-02395-JST
-2-

under ASC 606. These materials are now submitted in connection with this Rule 12(c) motion for judgment on the pleadings.

Specifically, Defendants now submit full transcripts of the April 26, 2018 and February 20, 2020 earnings calls. The prior submitted excerpts (*see* ECF Nos. 47-1, Exs. 26 and 8) did not include the portions of these two transcripts that reference the Company's SEC filings and only included some of the portions of the transcripts that show the Statements were made in the context of ASC 606 revenue recognition.[3] Defendants also submit additional excerpts of the Company's annual reports on Form 10-K filed with the SEC on March 19, 2018 and March 14, 2019, key pages that show eHealth's disclosure of operational expenses, including those associated with customer care. *See* ECF Nos. 47-1, Exs. 10 and 2. Also before the Court are excerpts of the Company's quarterly report on Form 10-Q filed with the SEC on November 8, 2019 that, similar to the 10-Ks, show the Company disclosed operational expenses, including those associated with customer care. Defendants also submit for the first time copies of the Company's April 26, 2018 and February 20, 2020 earnings call press releases – referenced in the earnings call transcripts and filed with the SEC on Form 8-K the same day as their corresponding earnings call – that include the Company's operational expenses, including those associated with customer care.

These full earnings call transcripts and SEC filings provide the Court with the material it stated was missing and necessary to dismiss the remaining Statements for lack of falsity. They show that Defendants disclosed, in both dollars and as a percentage of revenue, the very operational expenses the Complaint alleges were concealed. They also show that the challenged Statements were made in the context of revenue recognition under ASC 606 in that Defendants used revenue recognition and ASC 606 specific language like "constrained lifetime value," "constrained assumption," "no meaningful service component," "recognize the revenue," "service obligation is completed," and "recognize the lifetime value."

These full earnings call transcripts and SEC filings also provide the Court with the material it needs to conclude that the Complaint fails to plead a strong inference of scienter as to the

---

[3] For the April 26, 2018 earnings call transcript, Defendants only submitted 4 of its 18 pages. *See* ECF No. 47-1, Ex. 26. For the February 20, 2020 earnings call transcript, Defendants only submitted 4 of its 20 pages. *See* ECF No. 47-1, Ex. 8.

Statements. In denying the Rule 12(b)(6) motion to dismiss as to the Statements, the Court reasoned that the Company's "operational expenses" were "significant relative to eHealth's commission revenue" and therefore could be presumed to have been known by Defendants. MTD Order at 18-19. The Court's ruling, however, hinged on the premise that Defendants "failed to mention or acknowledge" operational expenses "when making the challenged statements ...." *Id*. at 19. The transcripts and SEC filings show that Defendants actually mentioned and acknowledged these operational expenses in connection with the challenged Statements.

The Complaint also should be dismissed under Rule 12(c) because it does not plead loss causation. The Muddy Waters short-seller report cannot constitute a corrective disclosure of Defendants' alleged misstatements, and the Complaint fails to allege that there was ever a disclosure about customer care expenses that corrected any prior alleged misstatement. Moreover, the Complaint does not plead that any alleged concealment of operational expenses inflated eHealth's stock price.

In sum, the Complaint, as supplemented by Plaintiff, fails to state a claim as a matter of law. Judgment in favor of Defendants under Rule 12(c) is warranted at this juncture, before discovery commences in earnest, and would promote the general policy of securing the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## II.     STATEMENT OF FACTS

**eHealth's Business.** eHealth is a leading health insurance marketplace and broker that enables consumers to shop, apply for, and purchase health plans. ¶ 20. A substantial portion of its revenue is composed of commissions it receives from health insurance companies for insurance policies it brokers, including the Medicare Advantage product at issue here. *Id*. eHealth incurs operational expenses, which were routinely disclosed in its SEC filings[4] and discussed during its quarterly earnings calls throughout the alleged Class Period.[5] eHealth consistently informed

---

[4] *See, e.g.*, Ex. 8 at 46 (disclosing "[o]perating costs and expenses," including "[c]ustomer care and enrollment" expenses), 56 (disclosing "[c]ustomer care and enrollment" expenses "per approved member"), 61 (disclosing "[c]ustomer care and enrollment" expenses as a "percentage of total revenues"); Ex. 3 at 58, 61 (same).

[5] *See, e.g.*, Ex. 1 at 8, 11; Ex. 4 at 7-9, 13.

investors that its "[o]perating costs and expenses" consist of "marketing and advertising," "customer care and enrollment," "technology and content," and "general and administrative" expenses. *See* note 4, *supra* (emphasis added).

**ASC 606.** As discussed in the MTD Order, eHealth in 2018 adopted a mandatory new, complex accounting standard for revenue recognition, Accounting Standard Codification ("ASC") 606. MTD Order at 2. ASC 606 requires eHealth to recognize as revenue all the commissions it expects to receive from an insurance company over the expected life of a customer's insurance policy (estimated "constrained lifetime value" or "LTV"). Ex. 8 at 15-16 (emphasis added); ¶¶ 2, 29. ASC 606 provides in relevant part that revenue should be recognized "at the time the related performance obligation is satisfied by transferring the promised good or service to the customer." *Id.* at 85.[6] As Plaintiff admits, eHealth's "performance obligation is satisfied" when an insurer approves an applicant that eHealth procured. *Id.*; ¶ 29 (ASC 606 required that eHealth recognize commission revenue "immediately upon applicant approval."); ¶ 37 (eHealth "implemented this new rule [ASC 606] by recognizing commission revenue when the insurance carrier approved the policy."). In other words, once an applicant is approved by an insurer, eHealth recognizes the constrained LTV of the related commission.

**The Remaining Challenged Statements.** The Court dismissed all claims that eHealth engaged in an "aggressive" application of ASC 606 by using an improper estimate of constrained LTV that did not factor in increased member churn, thereby inflating revenue and profit, or that the Company otherwise "concealed increased churn ...." MTD Order at 6-14. The only challenged statements not dismissed concerned operational expenses, specifically customer care, made in Q&A sessions during the Company's earnings calls on April 26, 2018 and February 20, 2020:

<u>April 26, 2018 – Q1 2018 Earnings Call</u>

> <u>Analyst</u>: So I wanted to walk through the commission receivables. So if I look at the combination of your short and your long-term receivables, even relative to your enterprise value, it's basically equivalent. So effectively that represents receivables

---

[6] The five steps to revenue recognition outlined in ASC 606 are: (1) identification of the contract, or contracts, with a customer; (2) identification of the <u>performance obligations in the contract</u>; (3) determination of the transaction price; (4) allocation of the transaction price to the performance obligations in the contract; and (5<u>) recognition of revenue, when, or as, a performance obligation is satisfied</u>. *See* Ex. 8 at 85. Costs and expenses associated with revenue are not a factor in ASC 606's five-step analysis. *See id.*

that you will ultimately – you will be receiving cash for under that constrained assumption. Are there any other real costs associated against that?

Mr. Flanders:  No, the costs attached to each of the receivable balances have essentially been absorbed as we generate the revenue in any particular quarter. So as the cash comes in, there is no additional cost attached to that. And the reason that those receivables are there is because there is no meaningful service component attached to them either. So according to our contracts with the carriers, these are all cash collection expectations that we have, both in the short term and long term.

¶ 75 (emphasis identifies portion alleged to be false or misleading); Ex. 1 at 11.

### February 20, 2020 – Q4 2019 Earnings Call

Analyst:  Okay. The final question would be, I know you highlighted the substantial growth in your commission receivable, both current and noncurrent. Can you talk about – and I know you mentioned some of this in your prepared remarks, can you talk about the expense associated with that receivable? Maybe the biggest piece would be the noncurrent. Is there any expense associated with that? Or is that pure, pure cash?

Mr. Yung:  So the commission receivable represents the cash collections to be collected associated with the commissions that we earn from carriers for the policies that we help acquire customers for them on their behalf. So once that's happened, and it's actually the reason why we recognize the revenue we do, our service obligation is completed, and therefore, we recognize the lifetime value of that. From an operating perspective, other than reconciling the cash coming in and the cash that we should be being paid as a broker record, there's no other cost associated.

Mr. Flanders:  There's no cost against it, Greg. It's all – the costs have been expensed in the period. And it's all cash to be collected free of additional charge.

¶ 91 (emphasis identifies portion alleged to be false or misleading); Ex. 4 at 13. Plaintiff contends that these statements were misleading because they "left investors with the false impression that the commission receivables reported by eHealth had no associated costs." ¶ 76; *see* ¶ 91. The Court did not dismiss these Statements because it did not have before it the judicially noticeable or incorporated by reference material it considered to be necessary to show at the pleading stage that the Statements referenced SEC filings containing operational expenses or were made in the context of ASC 606 revenue recognition. MTD Order at 15-16.

**Procedural History.** Following Plaintiff's failure to amend the Complaint pursuant to the MTD Order, Defendants answered the Complaint on October 1, 2021. ECF No. 76. Shortly thereafter, on November 11, 2021, a Notice of Death of Lead Plaintiff Billy White was filed. ECF No. 78. In January 2022, the Court entered orders re-opening the lead plaintiff appointment

process.  ECF Nos. 83, 85.  On November 9, 2022, the Court appointed the Fund as Lead Plaintiff and Robbins Geller Rudman & Down LLP as Lead Counsel.  ECF No. 113.  On November 29, 2022, the Fund filed a Supplement to the Complaint.  ECF No. 116.  Plaintiff's Supplement replaced the name of the original lead plaintiff with the Fund's name, changed the words "undersigned attorneys" on page 1 with "attorneys," and replaced paragraph 12 of the Complaint with allegations regarding the Fund's purchase of eHealth stock.  *Id.*  The Supplement did not otherwise amend, modify, or supplement the Complaint.

## III.   ARGUMENT

### A.   STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial ...."  Fed. R. Civ. P. 12(c).  A Rule 12(c) motion "is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998); *see also Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  "A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts stated under a cognizable theory."  *In re Verisign Corp. Sec. Litig.*, 2005 WL 2893783, at *3 (N.D. Cal. Nov. 2, 2005).  "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) ...."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted).  In considering a Rule 12(c) motion, the court may consider materials subject to judicial notice under Federal Rule of Evidence 201 without converting the motion into one for summary judgment.  *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008).  The court also may consider documents attached to or incorporated by reference in the operative complaint.  *Valiente v. Swift Transp. Co. of Arizona, LLC*, 2020 WL 8812885, at *1 (C.D. Cal. Apr. 24, 2020); *Summit Media LLC v. City of Los Angeles*, 530 F. Supp. 2d 1084, 1096 (C.D. Cal. 2008); *Landmark Equity Fund, II, LLC v. Arias*, 2015 WL 5882321, at *3 (E.D. Cal. Oct. 5, 2015).

**B.    THE COMPLAINT FAILS TO PLEAD THAT THE APRIL 26, 2018 OR FEBRUARY 20, 2020 STATEMENTS WERE FALSE OR MISLEADING**

The Complaint, documents incorporated by reference in the Complaint, and documents judicially noticeable show that the remaining Statements were not false or misleading and did not conceal the fact that eHealth had post-enrollment operational expenses.  First, eHealth repeatedly disclosed the existence of its operational expenses, including customer care, in the very earnings calls in which the Statements were made, in earnings press releases referenced in those earnings calls that were filed on Form 8-K the same day, and in other SEC filings referenced in the earnings calls.  Second, the Complaint fails to plead particularized facts showing what portion of "customer care and enrollment" expenses was even attributable to post-enrollment member retention efforts.  Third, the context surrounding the Statements in the earnings calls show that they were made from an accounting perspective in the context of ASC 606.

**1.    Defendants Disclosed eHealth's Operational Expenses, Including Customer Care and Enrollment, During the April 2018 and February 2020 Earnings Calls, and in SEC Filings Referenced in Those Earnings Calls**

The Complaint alleges that Defendants' Statements during two earnings calls in April 2018 and February 2020 "concealed the operating costs that eHealth must incur to retain members" and "left investors with the false impression that the commission receivables reported by eHealth had no associated costs."  MTD Order at 14 (quoting ¶ 76).[7]  The Court did not dismiss these Statements on Defendants' motion to dismiss because it concluded, based upon the information submitted, that the earnings calls did not discuss operational expenses and did not reference SEC filings that did.  *Id*. at 16.  The full transcripts submitted in connection with this motion, however, show that Defendants <u>did</u> discuss operational expenses during the earnings calls and <u>did</u> reference SEC filings that provided abundant information about operational expenses, including customer care.  This context is critical to determining whether the Statements created "an impression of a state of affairs that differs in a material way from the one that actually exists."  *Brody v.*

---

[7] The Complaint does not allege that eHealth failed to record any of its operational expenses, generally, or its customer care or post-enrollment customer retention expenses, specifically, in its financial statements as they were incurred.

*Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *see Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190-91 (2015) (alleged misstatement must be read "in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information"); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4, 1408-09 (9th Cir. 1996) (same); *DeMaria v. Andersen*, 318 F.3d 170, 180 (2d Cir. 2003) (considering "whether defendants' representations, taken together and in context, would have misl[ed] a reasonable investor about the nature of the [securities].") (citation omitted).

During the April 26, 2018 earnings call, far from concealing the Company's operational expenses, Mr. Francis emphasized the existence of customer care costs: "We are also providing [in the earnings release issued before the call] customer care enrollment cost per approved Medicare equivalent and Individual & Family Plan equivalent member ...." Ex. 1 at 8 (emphasis added). Focusing on customer care, Mr. Francis advised that one of eHealth's "key priorities" was to "increas[e] the efficiency of our customer care and enrollment team with a goal to boost conversion and group retention." *Id*. at 8, 7 (emphasis added); *accord* MTD Order at 13 (dismissing churn statements because "Defendants discussed this information about churn during the same earnings call"). At the beginning of this earnings call, Defendants "refer[red]" investors "to the information included in our press release and in our SEC filings." Ex. 1 at 4 (emphasis added). The referenced April 26, 2018 earnings press release, filed that same day on Form 8-K with the SEC, disclosed the Company's total "[o]perating costs and expenses" including "[c]ustomer care and enrollment" expenses of $13.2 million, Ex. 2 at 8, "[c]ustomer care and enrollment ('CC&E') expense per approved member" of $350 per Medicare Advantage-equivalent member, *id*. at 18, and that "GAAP customer care and enrollment expense" was 31% of total revenues in the first quarter, *id*. at 19. The Company's annual report on Form 10-K filed with the SEC on March 19, 2018, five weeks before the earnings call, disclosed 2017 "[o]perating costs and expenses[,]" including "[c]ustomer care and enrollment" expenses of $59.2 million, and 2017 "[c]ustomer care and enrollment" expenses of 35% of total annual revenue. Ex. 3 at 45, 58, 61.

During the February 20, 2020 earnings call, Defendants explicitly acknowledged and discussed customer care expenses many times before the Statement at issue was made. In his

prepared remarks, Mr. Yung stated: eHealth was "review[ing] our operating expenses and profitability metrics," and that "[c]ustomer care and enrollment costs per approved Medicare member grew 13% in 2019 compared to 2018." Ex. 4 at 7.  He further explained, we expect "customer care enrollment expenses [to] grow[] roughly in line with projected 2020 revenue growth."  *Id.* at 9; *see also See* MTD Order at 13.  Importantly, at the beginning of this earnings call, Defendants "refer[red]" investors "to the information included in our press release issued today and in our SEC filings."  Ex. 4 at 4 (emphasis added).  The referenced February 20, 2020 earnings release, filed on Form 8-K with the SEC, disclosed "[o]perating costs and expenses[,]" including "[c]ustomer care and enrollment" expenses of $52.7 million, for the fourth quarter and $134.3 million for FY 2019.  Ex. 5 at 10.  It also disclosed "Medicare customer care and enrollment ('CC&E') cost per approved MA-equivalent member" of $242 for the fourth quarter and $355 for FY2019, *id* at 21, and "GAAP customer care and enrollment expense" that was 17% of total revenue for the fourth quarter and 37% of total revenue for FY2019, *id*. at 22.  The Company's 10-Q filed on November 8, 2019, the most recent periodic filing before the earnings call, disclosed "[o]perating costs and expenses[,]" including "[c]ustomer care and enrollment" expenses of $40.1 million, for the third quarter, Ex. 6 at 4, "Medicare customer care and enrollment ('CC&E') cost per approved MA-equivalent member" of $819 for the quarter, *id*. at 40, and "customer care and enrollment" expense that was 57% of total revenue for the quarter, *id* at 42.

These abundant operational expense disclosures before, the same day as, and during the earnings call show that Defendants did not conceal operational expenses or create any misimpression that eHealth did not incur such expenses.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (dismissing complaint for failure to plead facts to state a claim that is "plausible on its face."); *Par Investment Partners, LP v. Aruba Networks, Inc.*, 681 F. App'x 618, 619 (9th Cir. 2017) (affirming dismissal with prejudice; defendants "generally cannot be held liable for securities fraud" for omissions where "the company had already made 'detailed disclosures concerning'" the topic) (citation omitted); *Oregon Public Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) ("Plaintiffs' omissions theory fails to state a claim because the Defendants clearly disclosed material information to investors").

## 2. The Complaint Fails to Allege Facts Showing That eHealth Incurred Material Post-Enrollment Retention Expenses

The Complaint fails to plead the amount of the allegedly concealed post-enrollment retention expenses in the first instance, let alone specific facts showing that such expenses were material. Simply pointing to "customer care and enrollment" expenses (¶¶ 31-33) does not plead customer retention expenses with particularity because, as the Complaint acknowledges, "retention" expenses are only "a percentage of Customer Care and Enrollment ...." ¶ 58. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) (affirming dismissal where allegations lacking "specifics" invited the court to "speculate" as to the "severity of the problems"); *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 886 (N.D. Cal. 2020) (no falsity because, *inter alia*, "there are no allegations quantifying the decline in MAP sales"), *aff'd sub nom. Weston Family Partnership LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022); *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. 2019) (no falsity; plaintiff does not "provide allegations that quantify the actual staffing problems, which makes it difficult to understand the severity of the problem or whether that actually had an impact on revenue"). In short, the Complaint's allegations regarding post-enrollment member retention expenses are conclusory and fall far short of the Reform Act's particularity requirements. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2019) (Reform Act requires that a "complaint plead both falsity and scienter with particularity"); *see Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (conclusory allegations "are not entitled to the assumption of truth").

## 3. The Statements Were Not Misleading Because They Were Made From an Accounting Perspective in the Context of ASC 606 and Revenue Recognition

The Court did not dismiss the Statements on Defendants' motion to dismiss because it concluded that Defendants had "not pointed to any material" the Court could "consider ... that would allow the Court to infer that" they "were made in the context of the mechanics of revenue recognition under ASC 606." MTD Order at 15. As stated above, Defendants only submitted excerpts of the two earnings calls. With this motion, Defendants submit the full transcripts which show that the Statements themselves and their context concerned eHealth's revenue recognition

accounting under ASC 606.

In the challenged Statements, eHealth conveyed that after enrolling a customer, it did not incur additional costs tied to a performance obligation that had to be offset against its receivables (the revenue it had recognized) for purposes of revenue recognition.  This is because, as eHealth disclosed, its obligation to the insurer was complete once the insurer approved a customer's application.  At that point, eHealth had fully earned its commission receivables and was not required by its insurer contracts to do anything more to recognize revenue.  ¶¶ 29, 37 (eHealth recognized commission upon applicant approval).  Customer care expenses related to customer retention efforts, while a worthwhile goal for the Company, were not a performance obligation due to eHealth's customers or insurers.  Any expenses associated with customer care and enrollment are not held in a corresponding account to a commissions receivables account, but instead are simply reflected in the financial statements for the quarter in which they are incurred.

***April 26, 2018 Earnings Call.***  Both Mr. Flanders and Mr. Francis began their prepared remarks by stating that it was "the first time that this commissions receivable value has been reflected in the company's financial statements as a result of the <u>new accounting convention</u>," *i.e.*, ASC 606.  Ex. 1 at 5 (emphasis added); *see also id*. at 7 ("This is the first time that we are reporting our financial results <u>based on the ASC 606 revenue recognition accounting standard</u>.").  Defendants noted that eHealth's balance sheet showed a "commission receivable balance" that represented "the <u>constrained amount of estimated commissions</u> that we expect to collect <u>over time</u> from all of our existing policies."  *Id*. at 5; *see also id*. at 9 (the "balance sheet also reflects a significant commissions receivable balance ... that <u>we booked pursuant to ASC 606</u>").  This identification of a "constrained amount of estimated commissions" clearly referred to the "constrained lifetime value" or "LTV" assumptions used by the Company with respect to revenue recognition under ASC 606.  Ex. 8 at 15-16 (emphasis added); ¶¶ 2, 29.

Beyond the prepared remarks, the allegedly misleading question-and-answer pairing actually shows that the questioning analyst and the answering eHealth executive were speaking in the context of revenue recognition accounting under ASC 606.  The analyst's question concerned the "constrained assumption," referring to the constrained lifetime value assumption used by

eHealth for revenue recognition under ASC 606. Ex. 1 at 11. The analyst also phrased his question in terms of "costs associated" with this constrained assumption. *Id.* Since ASC 606 was new to everyone, the analyst appears to have wondered if there was a corresponding cost account that would move in tandem with the unpaid commission receivables account. In responding, Mr. Flanders was trying to explain that under ASC 606, revenue is recognized using the LTV of the insurance policies once eHealth's performance obligation is satisfied. *See supra* note 6. The operational expenses, including customer care and enrollment expenses, are "absorbed" or recognized as they are incurred in any quarter. Ex. 1 at 11. They are not held on the balance sheet in an account to be matched with the payment of a commission receivable. Mr. Flanders clarified that "there is no meaningful service component" to eHealth's performance obligation that would require such an account, echoing the language of ASC 606. *Id.*; *see supra* note 6. Defendants' statements during this earnings call cannot be construed to have falsely stated that the Company did not have operational expenses, generally, or post-enrollment customer retention expenses, specifically. Such expenses are simply reflected in the financial statements in the quarter in which they are incurred.

*February 20, 2020 Earnings Call.* Similar to the April 2018 earnings call, the analyst requested clarification as to whether there is an "expense associated" with the Company's "commission receivable" on its balance sheet. Ex. 4 at 13. Mr. Yung, the CFO, responded by first explaining the basic accounting concept of a commission receivable: "the commission receivable represents the cash collections to be collected associated with the commissions that we earn from carriers for the policies that we help acquire customers for them on their behalf." *Id.* He continued, leaving no doubt that he was speaking in the context of revenue recognition under ASC 606 by saying, "<u>it's actually the reason why we recognize the revenue we do, our service obligation is completed, and therefore, we recognize the lifetime value of that</u>." *Id.* (emphasis added). Like Mr. Flanders almost two years before, Mr. Yung invoked the language of ASC 606, referring to "recogniz[ing] the revenue," the "complet[ion]" of eHealth's "service obligation," and "lifetime value." *Id.* Mr. Flanders also invoked accounting terminology, stating that costs associated with

the revenue had been "expensed in the period" so there was no "additional charge" to be recorded against revenue when the cash was actually received.

In light of the clear ASC 606 and revenue recognition-related terminology used by analysts and Defendants during these earnings calls, Plaintiff fails to allege specific facts to support any plausible interpretation that the Statements were not made in the context of ASC 606. Indeed, no other interpretation can be squared with a fair reading of the Statements as a whole. *See, e.g.*, *Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019) (plaintiffs failed to state a claim where they asked "the Court to make inferences contradicted by the statements viewed properly as a whole"); *West v. eHealth, Inc.*, 2016 WL 948116, at \*5 (N.D. Cal. Mar. 14, 2016) (rejecting "interpretations of the statements that are taken out of context and are not plausible on [their] face").

### C.    THE COMPLAINT FAILS TO ALLEGE SCIENTER IN CONNECTION WITH THE APRIL 26, 2018 AND FEBRUARY 20, 2020 STATEMENTS

The Court need not consider scienter because the Complaint fails to plead any actionable statement. *See In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at \*10 (N.D. Cal. Feb. 12, 2015) (holding that because Defendants statements were not actionable "the Court need not address" other arguments before dismissing the claims). In any event, Plaintiff's meager and generalized allegations of scienter fall far short of the Reform Act's rigorous pleading standards for pleading a "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (the "strong inference" "must be more than merely 'reasonable' or 'permissible' – it must be <u>cogent and compelling</u>, thus strong in light of other explanations") (emphasis added); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) (Reform Act imposes an "exacting" pleading obligation on plaintiff); *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (the pleading standards for scienter "present no small hurdle for the securities fraud plaintiff") (citation omitted).

First, the Complaint's allegation that Defendants concealed the existence of post-enrollment customer care expenses is implausible (Section III.B.1, *supra*), precluding a strong inference of scienter. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020)

("Allegations that are implausible do not create a strong inference of scienter."). Defendants' ample disclosures of post-enrollment operational expenses throughout the purported class period belie an inference that Defendants acted with an intent to deceive or deliberate recklessness, as a matter of law. It is illogical to allege that Defendants hid the existence of customer care expenses in an earnings call, but disclosed these expenses the same day in press releases filed on Form 8-K with the SEC and in every periodic filing filed before and after the earnings calls with the SEC on Forms 10-Q and 10-K.

Second, the Complaint is devoid of "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made" – *i.e.*, each defendant's state of mind. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008); *see In re Rigel Pharm.s, Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012) (no strong inference of scienter; "Plaintiff points us to no allegations that [Defendants] believed that they made false or misleading statements"); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1088 (9th Cir. 2002) ("there are no facts alleged to show why the defendants would know that their representations were false or misleading if they were so"), *abrogated on other grounds as recognized in South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). At a minimum, the accounting language invoked by Defendants in the Statements gives rise to the nonculpable inference that Defendants were merely trying to explain the Company's application of ASC 606, a revenue recognition rule that does not require holding off revenue recognition due to ongoing customer retention expenses that were not a performance obligation, as opposed to disclaiming the existence of any ongoing post-enrollment customer care expenses. *See Tellabs*, 551 U.S. at 323 (court "must take into account plausible opposing inferences").

Third, the Complaint fails to provide any specific factual basis that would support an inference that post-enrollment member retention expenses were misrepresented or were significant at all, let alone of such "prominence" to eHealth's total operating expenses to warrant a core operations inference. *See Twitter*, 506 F. Supp. 3d at 889 (rejecting core operations theory where plaintiff had "not alleged facts supporting the inference that the privacy setting change's impact

on the company's financials was so dramatic that it would be absurd to think that defendants did not know that something was wrong") (citation omitted); *accord Knox v. Yingli Green Energy Holding Co.*, 2016 WL 6609210, at \*13 (C.D. Cal. May 10, 2016) (no scienter where plaintiff failed to show that revenue from customers with poor payment history "made up more than a negligible portion of Yingli's overall revenue").

Fourth, general allegations of equity compensation (¶¶ 132-138) are inadequate because "it is common for executive compensation, including stock options and bonuses, to be based partly on the executive's success in achieving key corporate goals." *Rigel*, 697 F.3d at 884. The *Rigel* court explained, because courts must consider "plausible opposing inferences, we will not conclude that there is fraudulent intent merely because a defendant's compensation was based in part on such successes." *Id*.

Finally, even under a holistic view, the Complaint pleads no factual basis to support a "strong inference of scienter" under the Reform Act's "exacting" pleading standards. *Zucco*, 552 F.3d at 990, 991. Considering the Statements in full and in the context of Defendants' use of ASC 606 and revenue recognition phraseology, alongside the other statements disclosing customer care expenses, the far more plausible inference is that Defendants honestly believed they were discussing such expenses from the accounting perspective of ASC 606. *See Waterford Township Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1156 (C.D. Cal. 2018) (no strong inference of scienter because allegations are "amenable to a benign explanation"), *aff'd sub nom. Castro v. Mattel, Inc.*, 794 F. App'x 669 (9th Cir. 2020); *In re XenoPort, Inc. Sec. Litig.*, 2011 WL 6153134, at \*7 (N.D. Cal. Dec. 12, 2011) (same).[8]

---

[8] To the extent the Complaint purports to plead scheme liability claims under Section 10(b) (¶¶ 155-156), such claims also fail for failure to plead a strong inference of scienter. *See In re Nektar Therapeutics*, 2020 WL 3962004, at \*13 (N.D. Cal. July 13, 2020) (scienter is an element of scheme liability claims), *aff'd*, 34 F.4th 828 (9th Cir. 2022). In addition, the Complaint fails to plead that each defendant engaged in an inherently deceptive or manipulative act in furtherance of the alleged scheme. *See Burnett v. Rowzee*, 2007 WL 4754539, at \*5 (C.D. Cal. Oct. 18, 2007) (to be liable for a scheme to defraud, each "defendant must have committed a manipulative or deceptive act 'in furtherance of the scheme'") (citation omitted). The Complaint alleges that "Defendants" "participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, [and] press releases" (¶ 156) but fails to plead particularized facts showing which Defendant actually engaged in such acts and even if he did, that such acts were "inherently deceptive." *S.E.C. v. Lucent Technologies, Inc.*, 610 F. Supp. 2d 342, 360 (D.N.J. (continued...)

**D.    THE COMPLAINT FAILS TO ALLEGE LOSS CAUSATION**

The Complaint fails to allege with particularity facts showing that investors suffered an "economic loss" that was proximately caused by a corrective disclosure of the alleged truth. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *see Apollo*, 774 F.3d at 605 (plaintiffs must plead loss causation with particularity).  Nowhere does the Complaint allege that eHealth ever disclosed operational expenses that were different from what it had previously disclosed, or that eHealth somehow surprised the market by revealing significant post-enrollment customer care expenses.

While the Complaint points to the Muddy Waters report as revealing the "truth" (¶ 6), that report does not constitute a corrective disclosure as a matter of law.  On its face, the report indicates that its authors are short-sellers who "stand to realize significant gains" should eHealth's stock price decline and who expressly made "no representation, express or implied, as to the accuracy, timeliness, or completeness" of the report, whose contents were "obtained from public sources" and based on "generally available information ...."  Ex. 7 at 1.  The Ninth Circuit has found blog posts with these characteristics insufficient to constitute corrective disclosures.  *See In re Bofl Holdings, Inc. Sec. Litig.*, 977 F.3d 781, 797 (9th Cir. 2020) (affirming denial of leave to amend loss causation allegations that lacked a corrective disclosure; "it is not plausible that the market reasonably perceived these posts as revealing the falsity of Bofl's prior misstatements" because the posts "were authored by anonymous short-sellers who had a financial incentive to convince others to sell, and the posts included disclaimers from the authors stating that they made 'no representation as to the accuracy or completeness of the information set forth in this article.'").  As in *Bofl*, a reasonable investor reading the Muddy Waters report would "likely have taken their contents with a healthy grain of salt." *Id.*

The Complaint also does not even allege that the purported concealment of operational expenses caused any inflation in eHealth's stock price.  Rather, the Complaint alleges that the

---

2009) (scheme liability is limited to conduct involving "sham" or "'inherently deceptive' transactions"); *see In re Edward D. Jones & Co., L.P. Sec. Litig.*, 2019 WL 2994486, at *7 (E.D. Cal. July 9, 2019) ("conduct that is consistent with the defendants' normal course of business would not typically be considered to have the purpose and effect of creating a misrepresentation" for scheme liability) (citation omitted).

purported price inflation was caused by alleged misstatements regarding "member churn and accounting violations ...." ¶¶ 144(c), (e); *see* ¶¶ 46, 106. In contrast, the Complaint alleges that the purported concealment of retention expenses "deprived" investors "of the ability to properly and adequately assess the true risks associated with purchasing eHealth stock." ¶¶ 73, 76, 93. The Complaint, however, never alleges that these concealed customer retention expenses have ever been revealed. The Statements, therefore, fail to support loss causation.

## E.    THE SECTION 20(a) CLAIM ALSO FAILS

Because the Complaint fails to allege an underlying violation of the Exchange Act, the Section 20(a) claim fails as a matter of law. *See, e.g.*, *Align Tech.*, 856 F.3d at 623 ("Plaintiff has not sufficiently alleged violations of Section 10(b) and Rule 10b-5. And, without 'a primary violation of federal securities law,' Plaintiff cannot establish control person liability."); *Lipton v. PathoGensis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002) ("to prevail on their claims for violations of § 20(a) and § 20A, plaintiffs must first allege a violation of § 10(b) or Rule 10b 5").

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Rule 12(c) motion and enter judgment in their favor on the remaining claims arising from the challenged Statements made on April 26, 2018 and February 20, 2020.

Respectfully submitted,

Dated: December 22, 2022

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

By: /s/ *Gregory L. Watts*
      Gregory L. Watts

GREGORY L. WATTS, SBN 197126
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:    (206) 883-2500
Facsimile:    (206) 883-2699
Email:          gwatts@wsgr.com

CATHERINE E. MORENO, SBN 264517
BETTY CHANG ROWE, SBN 214068
DYLAN G. SAVAGE, SBN 310452
650 Page Mill Road

Palo Alto, CA 94304-1050
Telephone:      (650) 493-9300
Facsimile:      (650) 565-5100
Email:          cmoreno@wsgr.com
                browe@wsgr.com
                dsavage@wsgr.com

*Attorneys for Defendants eHealth, Inc., Scott N. Flanders, and Derek N. Yung*