ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
          – and –
DOUGLAS R. BRITTON (188769)
LUCAS F. OLTS (234843)
RAPHAELLA FRIEDMAN (323324)
MEGAN A. ROSSI (318643)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dougb@rgrdlaw.com
lolts@rgrdlaw.com
rfriedman@rgrdlaw.com
mrossi@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re eHEALTH INC. SECURITIES LITIGATION | ) ) ) ) | Case No. 4:20-cv-02395-JST <br><br> <u>CLASS ACTION</u> <br><br> PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c) |

4892-0860-1932.v2

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ..................................................................................................................2

III. ARGUMENT .......................................................................................................................3

    A. Defendants' Motion Improperly Seeks Reconsideration of the Court's Motion to Dismiss Order .............................................................................................3

    B. Defendants' Motion Fails on the Merits .................................................................5

        1. The Numerous Outstanding Questions of Fact Require Denial of the Motion .........................................................................................6

        2. The Complaint Adequately Pleads that the April 26, 2018 or February 20, 2020 Statements Were False or Misleading ..........................7

            a. Defendants Failed to Disclose eHealth's Operational Expenses During the April 2018 and February 2020 Earnings Calls .................................................................................7

            b. The Concealed Operational and Post-Enrollment Retention Expenses Were Material ....................................................11

            c. The Statements Were Not Made in the Context of ASC 606 ........12

        3. The Complaint Adequately Pleads Scienter .............................................14

            a. The Court's Order Regarding Plaintiff's Scienter Allegations Was Correctly Decided.................................................14

            b. Defendants' Newly Raised Scienter Arguments Are Unavailing...............................................................................16

        4. The Complaint Adequately Pleads Loss Causation .................................17

        5. The Complaint Adequately Pleads a §20(a) Claim..................................21

IV. CONCLUSION..................................................................................................................21

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C) - 4:20-cv-02395-JST
- i -
4892-0860-1932.v2

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................5

*Azar v. Yelp, Inc.*,
   2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) .........................................................21

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) ......................................................................................14

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 887 (9th Cir. 2002) ...........................................................................3, 10, 12

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Cal.*,
   649 F. Supp. 2d 1063 (E.D. Cal. 2009)......................................................................15

*Cardoza v. United States*,
   1995 WL 810028 (E.D. Cal. Nov. 20, 1995)...............................................................6

*Carmen v. S.F. Unified Sch. Dist.*,
   982 F. Supp. 1396 (N.D. Cal. 1997),
   *aff'd*, 237 F.3d 1026 (9th Cir. 2001)........................................................................22

*Dekker v. Vivint Solar, Inc.*,
   542 F. Supp. 3d 959 (N.D. Cal. 2021),
   *appeal dismissed*, 2021 WL 6124511 (9th Cir. Oct. 18, 2021) ............................1, 7

*DeMaria v. Andersen*,
   318 F.3d 170 (2d Cir. 2003)........................................................................................11

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)...............................................................................................18, 19

*Erhart v. BofI Holding, Inc.*,
   387 F. Supp. 3d 1046 (S.D. Cal. 2019)....................................................................7, 13

*Futuredontics, Inc. v. Applied Anagramics Inc.*,
   1998 WL 132922 (C.D. Cal. Nov. 24, 1997),
   *aff'd*, 152 F.3d 925 (9th Cir. 1998)............................................................................6

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1989) ................................................................................6, 17

**Page**

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) ...................................................................................................5

*Henning v. Orient Paper, Inc.*,
    2011 WL 2909322 (C.D. Cal. July 20, 2011) ..........................................................................19

*In re Apple Comput., Inc. Sec. Litig.*,
    2003 WL 26111982 ................................................................................................................8, 9

*In re Banc of Cal. Sec. Litig.*,
    2017 WL 3972456 (C.D. Cal. Sep. 6, 2017)........................................................................18, 19

*In re: BofI Holdings, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020)
    *cert. denied*, _ U.S. _, 142 S. Ct. 71, 211 L. Ed.2d 11 (2021) ..........................................20, 21

*In re Celera Corp. Sec. Litig.*,
    2013 WL 4726097 (N.D. Cal. Sept. 3, 2013) ..........................................................................13

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ............................................................................................11, 18

*In re Network Assocs., Inc., Sec. Litig.*,
    2000 WL 33376577 (N.D. Cal. Sept. 5, 2000) ........................................................................16

*In re Plantronics, Inc. Sec. Litig.*,
    2022 WL 17974627 (N.D. Cal. Nov. 7, 2022) .....................................................................14, 21

*In re QuantumScape Sec. Class Action Litig.*,
    580 F. Supp. 3d 714 (9th Cir. 2022) .......................................................................................20

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ..............................................................................................15, 17

*In re Splunk Inc. Sec. Litig.*,
    592 F. Supp. 3d 919 (N.D. Cal. 2022) ..................................................................................6, 12

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ..................................................................................................10

*In re Toyota Motor Corp. Sec. Litig.*,
    2012 WL 3764903 (C.D. Cal. Feb. 21, 2012)...........................................................................4

**Page**

*In re Twitter*,
　506 F. Supp. 3d 867 (N.D. Cal. 2020),
　*aff'd sub nom. Weston Family P'ship LLP v. Twitter, Inc.*,
　29 F.4th 611 (9th Cir. 2022) ...............................................................................................12, 15

*In re Vantive Corp. Sec. Litig.*,
　283 F.3d 1079 (9th 2002)............................................................................................................17

*Kmiec v. Powerwave Techs. Inc.*,
　2014 WL 12567781 (C.D. Cal. Feb. 11, 2014).............................................................................5

*Knox v. Yingli Green Energy Holding Co.*,
　2016 WL 6609210 (C.D. Cal. May 10, 2016) ............................................................................15

*Lloyd v. CVB Fin. Corp.*,
　811 F.3d 1200 (9th Cir. 2016) ...................................................................................................21

*Longo v. Osi Sys. Inc.*,
　2021 WL 1232678 (C.D. Cal. Mar. 31, 2021).............................................................................20

*Loos v. Immersion Corp.*,
　762 F.3d 880 (9th Cir. 2014), *as amended* (Sept. 11, 2014).......................................................18

*Maiman v. Talbott*,
　2010 WL 11421950 (C.D. Cal. Aug. 9, 2010)......................................................................15, 17

*McGann v. Ernst & Young*,
　102 F.3d 390 (9th Cir. 1996) ....................................................................................................5, 6

*McSherry v. City of Long Beach*,
　423 F.3d 1015 (9th Cir. 2005), *as amended* (Oct. 27, 2005).......................................................6

*Milan v. Clif Bar & Co.*,
　489 F. Supp. 3d 1004 (N.D. Cal. 2020) .......................................................................................4

*Mineworkers' Pension Scheme v. First Solar Inc.*,
　881 F.3d 750 (9th Cir. 2018) ................................................................................................18, 20

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
　927 F. Supp. 2d 870 (C.D. Cal. 2013) .........................................................................................6

*Nguyen v. Endologix, Inc.*,
　962 F.3d 405 (9th Cir. 2020) ....................................................................................................16

**Page**

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
 575 U.S. 175 (2015) ...................................................................................................................10

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
 774 F.3d 598 (9th Cir. 2014) .....................................................................................................10

*Par Inv. Partners, LP v. Aruba Networks, Inc.*,
 681 F. App'x 618 (9th Cir. 2017) ..............................................................................................10

*Rudolph v. UTStarcom*,
 2008 WL 4002855 (N.D. Cal. Aug. 21, 2008) ..........................................................................18

*S. Ferry LP #2 v. Killinger*,
 542 F.3d 776 (9th Cir. 2008) ...........................................................................................14, 16, 17

*Schueneman v. Arena Pharms., Inc.*,
 840 F.3d 698 (9th Cir. 2016) .....................................................................................................10

*Sheet Metal Workers Nat' Pension Fund et al. v. Bayer Aktiengesellschaft, et al.*,
 2021 WL 5302525 (N.D. Cal. Nov. 15, 2021) ..........................................................................14

*Somerville v. W. Town Bank & Trust*,
 2020 WL 8256358 (D. Md. Dec. 4, 2020)...................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007).........................................................................................................15, 16, 17

*Thomas v. Magnachip Semiconductor Corp.*,
 167 F. Supp. 3d 1029 (N.D. Cal. 2016) .....................................................................................16

*Va. Bankshares, Inc. v. Sandberg*,
 501 U.S. 1083 (1991).....................................................................................................................9

*Vignola v. FAT Brands, Inc.*,
 2019 WL 6888051 (C.D. Cal. Dec. 17, 2019) ...........................................................................10

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
 Rule 12(b)(6).................................................................................................................................5
 Rule 12(c)..............................................................................................................................1, 5, 6

Local Civil Rules
 Rule 7-9..................................................................................................................................1, 3

**Page**

**LEGISLATIVE HISTORY**
Private Securities Litigation Reform Act of 1995
Pub. L. No. 104-67, 109 Stat. 737 (1995) ("PSLRA") ........................................................16, 18

## I.    INTRODUCTION

Defendants' Motion for Judgment on the Pleadings (ECF 117) ("MJOP" or the "Motion") is a thinly veiled request for the Court to reconsider its year old Order on the Motion to Dismiss.  ECF 64 (the "MTD Order").[1]  As there has been no change in the applicable law or underlying facts to justify such a request, Defendants have conjured the argument that if only the Court had reviewed the full earnings calls transcripts containing their false statements (rather than the excerpts they selected for their Motion to Dismiss), the case would have been dismissed.  But, in each instance, these are the same unpersuasive arguments and *same* transcript excerpts and exhibits already considered by the Court.  Both Defendants' Answer (ECF 76) (the "Answer") and Motion raise questions of fact that must be decided after discovery progresses rather than in a 12(c) motion for judgment on the pleadings that tests a complaint's legal sufficiency.  The Court should not permit Defendants to circumvent the requirements for reconsideration in this way.  *Dekker v. Vivint Solar, Inc.*, 542 F. Supp. 3d 959, 967 (N.D. Cal. 2021), *appeal dismissed*, 2021 WL 6124511 (9th Cir. Oct. 18, 2021) (refusing to permit party to "circumvent Civil Local Rule 7-9 and entertain a motion for reconsideration in the guise of a Rule 12(c) motion").

The Motion's motive – discovery delay – is evident.  The filing follows newly-appointed Plaintiff's Request for Production, to which Defendants have refused to respond until the instant Motion is resolved.  *See* Ex. 1.  Discovery has yet to even start in the nearly three years this litigation has been pending, despite the Court upholding portions of the Complaint over a year ago.  Defendants' recycled arguments solely to delay discovery within two months of Plaintiff's appointment should be rejected.  The Motion should be denied.

---

[1]    "Defendants" refers to eHealth Inc. ("eHealth" or "Company"), Scott N. Flanders ("Flanders"), Derek N. Yung ("Yung"), and David K. Francis ("Francis").  All paragraph references ("¶__") are to the Amended Complaint for Violations of the Federal Securities Laws (ECF 46) (the "Complaint").  References to "Motion to Dismiss" or "MTD" are to Defendants' Notice of Motion and Motion to Dismiss the Amended Complaint for Violations of the Federal Securities Laws (ECF 47).  Unless otherwise noted, all "Ex. __" citations are to the Declaration of Lucas F. Olts in Support of Plaintiff's Opposition to the Motion for Judgment on the Pleadings, filed concurrently herewith.

## II.   BACKGROUND

On August 12, 2021, this Court granted in part and denied in part Defendants' Motion to Dismiss.  MTD Order.  The Court held that the Complaint had sufficiently alleged the following statements were false and misleading.  Each statement was made in response to analyst questions about expenses associated with commission receivables:

April 26, 2018 (Q1 2018 Earnings Call):

[Scott N. Flanders eHealth, Inc. – CEO and Director]: No, the costs attached to each of the receivable balances have essentially been absorbed as we generate the revenue in any particular quarter.  *So as the cash comes in, there is no additional cost attached to that.  And the reason that those receivables are there is because there is no meaningful service component attached to them either*.  So according to our contracts with the carriers, these are all cash collection expectations that we have, both in the short term and long term.  ¶75.

February 20, 2020 (Q4 2019 Earnings Call):

[Derek N. Yung eHealth, Inc. – Senior VP & CFO]: So the commission receivable represents the cash collections to be collected associated with the commissions that we earn from carriers for the policies that we help acquire customers for them on their behalf.  So once that's happened, and it's actually the reason why we recognize the revenue we do, our service obligation is completed, and therefore, we recognize the lifetime value of that.  *From an operating perspective*, other than reconciling the cash coming in and the cash that we should be being paid as a broker record, *there's no other cost associated*.

[Scott N. Flanders eHealth, Inc. – CEO & Director]: There's no cost against it,  Greg. It's all – the costs have been expensed in period. And *it's all cash to be collected free of additional charge*.  ¶91.

The Court held that Defendants' statements on April 26, 2018 that "'as the cash comes in, there is no additional cost attached to that,'" and "'there is no meaningful service component attached to them'" suggested "that eHealth did not have to incur any costs, such as operational and customer service expenses, that would need to be offset against its commissions receivable" when "in reality, eHealth did have operational costs that had to be offset against its commissions receivable, such as costs of 'customer care and enrollment.'"  MTD Order at 15.  The Court concluded that "Plaintiff's allegations are sufficient to raise the reasonable inference that a reasonable investor could have been misled by the statements into believing, incorrectly, that eHealth did not have to incur any costs that had to be offset against the commissions it expected to receive from insurance companies."  *Id.*  This was "sufficient to raise the inference that the

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C) - 4:20-cv-02395-JST                                                                                         - 2 -
4892-0860-1932.v2

challenged statements created 'an impression of a state of affairs that differs in a material way from the one that actually exists.'" *Id.* (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 887, 1006 (9th Cir. 2002)).

The Court also reasoned that Defendants' statements on February 20, 2020 that "there's no other cost" from an "operating perspective" and that "[t]here's no cost against" the commissions receivable" also "suggest[ed] that eHealth had no operational expenses that would need to be offset against the commissions it expected to receive from insurers." *Id.* at 16-17.  The Court stated that "Plaintiff alleges that this suggestion contradicted the reality, which was that Defendants did have operational expenses that had to be offset against its commissions receivable." *Id.* at 17.

The Court also held Plaintiff sufficiently alleged scienter as to the individual Defendants and eHealth, concluding "Defendants acted with at least deliberate recklessness" under the core operations doctrine.  *Id.* at 19-20.  The Court reasoned, "[b]ecause of the magnitude of the operational expenses at issue, the amended complaint raises the inference that the individual Defendants, who allegedly participated in eHealth's management and operations at the highest level by virtue of being the company's CEO, CFO, and COO, were aware of them and the importance of disclosing them to investors." *Id.* at 19.  Defendants' failure to do so "created an obvious danger of misleading investors" from which one could reasonably infer scienter.  *Id.* at 19-20.  Finally, the Court upheld the §20(a) claim.  *Id.* at 21.

## III.    ARGUMENT

### A.    Defendants' Motion Improperly Seeks Reconsideration of the Court's Motion to Dismiss Order

Although styled as a motion for judgment on the pleadings, the Motion recycles identical arguments Defendants made and lost in their motion to dismiss, or ones they could have but failed to make at the time, and is in all practicality a motion for the Court to reconsider its previous order.  As Defendants do not even attempt to meet the requirements of United States District Court Northern District of California Civil Local Rule 7-9, the Motion should be denied.  Civ. L.R. 7-9(b).

For example, Defendants argue in the Motion that eHealth *did disclose* its operational expenses.  MJOP at 8.  But in both their Motion to Dismiss and Reply (ECF 54) ("MTD Reply"),

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C) - 4:20-cv-02395-JST                                                                                        - 3 -
4892-0860-1932.v2

Defendants argued the ***exact same thing*** – saying eHealth disclosed its retention costs in its financial statements as 'customer care and enrollment" expense, relied upon the ***same exhibits***, and Court rejected that argument. MTD at 20 ("Indeed, the retention costs were disclosed in its financial statements as 'customer care and enrollment' expense."); MTD Reply at 11 ("eHealth disclosed its "'customer care and enrollment expenses'" in its financial statements, which include retention costs."); MTD Order at 14-17; *compare* MJOP Exs. 1, 3, 4, *with* MTD Exs. 26, 10, 8.

Next, Defendants argue that Plaintiff has failed to allege facts showing that eHealth incurred material post-enrollment retention expenses. MJOP at 11. Again, this is the same argument from their Motion to Dismiss, where Defendants argued that operational expenses associated with ongoing customer care had no impact on revenue recognition and thus were immaterial. MTD Order at 15. The Court found the argument unpersuasive then, and it is no less so now. *Id.* at 15-16.

Defendants' argument that the statements were made in the context of ASC 606, and thus inactionable, was also previously considered and rejected. MJOP at 11-14; MTD Order at 15-16. Defendants claim that the full transcripts of the earnings calls are revelatory, but in reality they cite to pages the Court ***already possessed and considered***. *Compare* MJOP Exs. 1, 8, 4, *with* MTD Exs. 26, 2, 8; MJOP at 11-14.

Defendants also recycle the same arguments they presented and lost regarding scienter. *Compare* MJOP at 15-16, *with* MTD Order at 18-20 (arguing the Complaint's scienter allegations do not warrant a core operations inference), *and* MTD at 23-25, and MJOP at 16, *with* MTD Order at 19-20, 20 n.5 (arguing general allegations of equity compensation are inadequate to support a finding of scienter).

Styling these arguments as a motion for judgment on the pleadings is an improper work-around the strict requirements for reconsideration. *See Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1008 (N.D. Cal. 2020) (denying 12(c) motion as "effectively an improper motion for reconsideration"); *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3764903, at *1 (C.D. Cal. Feb. 21,

2012) ("Judicial economy would be undermined by allowing parties an unlimited right to revisit issues raised in Rule 12(b)(6) motions via Rule 12(c) motions.").[2]

### B.    Defendants' Motion Fails on the Merits

Even if the Court were to consider the Motion on its merits, Defendants' arguments all fail as a matter of law.  A 12(c) motion for judgment on the pleadings is an improper mechanism to rehash arguments that were already made, or that could have been made, in a previously filed motion to dismiss.  *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979, n.16 (9th Cir. 1999) (prior ruling denying motion to dismiss did not require reversal of ruling on Fed. R. Civ. P. 12(c) motion because "*Silicon Graphics* had not been decided when Judge Moskowitz ruled that Heliotrope's complaint satisfied the pleading standards of the PSLRA"); *see also Somerville v. W. Town Bank & Trust*, 2020 WL 8256358 at *2 (D. Md. Dec. 4, 2020) ("Rule 12(c) motion is not simply an opportunity for a defendant to advance arguments in support of dismissal that it failed to raise in an earlier motion to dismiss.").  To hold otherwise would circumvent the strict requirements for reconsideration.  *Kmiec v. Powerwave Techs. Inc.*, 2014 WL 12567781, at *2 n.2 (C.D. Cal. Feb. 11, 2014) ("Defendants' motion [for judgment on the pleadings] is therefore a motion for reconsideration" where "the Court expressly rejected Defendants' arguments in its [motion to dismiss] order.").

While the standard of review applicable to a Rule 12(c) motion may be the same as a Rule 12(b)(6) motion to dismiss in that courts must "tak[e] all allegations in the pleading as true" and "view the facts presented in the pleadings and the inferences to be drawn from them in the light most favorable to the nonmoving party"; the two are not interchangeable.  *McGann v. Ernst & Young*, 102

---

[2]    Defendants cite *Chavez v. United States* for the proposition that a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) can be a repeat of their motion to dismiss under Fed. R. Civ. P. 12(b)(6).  MJOP at 12.  They are mistaken.  That case involves a change in pleading standards applicable to plaintiffs' claims that warranted a Rule 12(b)(6)-type analysis. *Chavez*, 683 F.3d 1102, 1107 (9th Cir. 2012) ("After the Ninth Circuit reinstated plaintiffs' *Bivens* claims against the supervisory defendants, the Supreme Court decided [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)"] and that "[i]n light of *Iqbal*, the supervisory defendants filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").  Defendants point to no similar change that would warrant the 12(b)(6) repeat that their Motion presents.  Unlike in *Chavez*, this Court analyzed Defendants' Motion to Dismiss and the Complaint using the same pleading standards that Defendants cite now.

F.3d 390, 392 (9th Cir. 1996); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 927 F. Supp. 2d 870, 874 (C.D. Cal. 2013).  "A motion for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c) provides a means of disposing of cases when all material allegations of fact are admitted in the pleadings and only questions of law remain."  *Negrete*, 927 F. Supp. 2d, at 874 (citing *McGann*, 102 F.3d at 392).

### 1.      The Numerous Outstanding Questions of Fact Require Denial of the Motion

Judgment on the pleadings is thus only proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) ("For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false.").  The 12(c) motion must be denied unless it appears certain that the plaintiff would not be entitled to relief under any set of facts that could be proved.  *Futuredontics, Inc. v. Applied Anagramics Inc.*, 1998 WL 132922, at *3 (C.D. Cal. Nov. 24, 1997), *aff'd*, 152 F.3d 925 (9th Cir. 1998).  Defendant's Answer is considered and "all of the well pleaded factual allegations in the adversary's pleadings are taken to be true, and all contravening assertions in the movant's pleadings are taken to be false."  *Cardoza v. United States*, 1995 WL 810028, at *2 (E.D. Cal. Nov. 20, 1995).

Here, each of Defendants' assertions – whether eHealth's operational expenses were sufficiently disclosed in the earnings calls, whether the post-enrollment operational expenses were material, whether the earnings call was limited to ASC 606's context, whether Defendants acted with scienter, and whether the revelation of the fraud caused Plaintiff's losses – are all questions of fact.  MJOP at 8-17.  Indeed, "[o]nly if the disclosure is so obvious that reasonable minds cannot differ is the issue [of whether a statement was misleading] appropriately resolved as a matter of law.  Like materiality, adequacy of disclosure is normally a jury question."  *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 940 (N.D. Cal. 2022) (alteration in original) (Tigar, J.); *McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005), *as amended* (Oct. 27, 2005) (plaintiffs' allegation of "deliberate fabrication" and defendants' qualified immunity defense raised factual dispute not to be

decided under 12(c)); *Dekker*, 542 F. Supp. 3d 959 at 965 (factual disputes over whether certain provisions of business agreements were unenforceable precluded court from deciding 12(c)); *Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, 1054 (S.D. Cal. 2019) (factual disputes over whether internal auditor made false statements to coworkers in an effort to conduct rogue, unauthorized investigations to harm employer precluded judgment on the pleadings in fraud claim).

### 2. The Complaint Adequately Pleads that the April 26, 2018 or February 20, 2020 Statements Were False or Misleading

Defendants argue that the Statements were not false or misleading because: (1) when viewed in the full context of the entire earnings call, the operational expenses were disclosed (MJOP at 8-10); (2) the concealed operational and post-enrollment expenses were neither quantified nor material (MJOP at 11); and (3) the statements were made from an accounting perspective in the context of ASC 606 (MJOP at 11-14).  None of these arguments have merit.

### a. Defendants Failed to Disclose eHealth's Operational Expenses During the April 2018 and February 2020 Earnings Calls

Repeating the same argument as their Motion to Dismiss, Defendants again claim their statements during the April 2018 and February 2020 earnings calls were not false or misleading because they disclosed eHealth's operational expenses.  *Compare* MJOP at 8, *with* MTD at 20 ("Indeed, the retention costs were disclosed in its financial statements as 'customer care and enrollment expense.'"); MTD Reply at 11 ("eHealth disclosed its 'customer care and enrollment expenses' in its financial statements, which include retention costs.").  In its Order, the Court correctly rejected this argument and held that Plaintiff has adequately pled that the statements on April 26, 2018 and February 20, 2020 were false and/or misleading.  MTD Order at 14-17.  The Court's analysis should end there.

Defendants justify their Motion by attaching the entire transcripts of the two earnings calls and additional pages of eHealth's Form 10-K for the year ended December 31, 2017, claiming it is "new and material" information.  MJOP at 8-10; MJOP Exs. 1, 3, 4.  These additional pages are irrelevant.  On April 26, 2018, Flanders explicitly denied additional costs and stated that "as the cash

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C) - 4:20-cv-02395-JST                                                        - 7 -
4892-0860-1932.v2

comes in, there is no additional cost attached to that . . . because there is no meaningful service component attached." ¶75. Defendants now point to three additional statements in the earnings call to prove that operational expenses were disclosed and that Defendants referenced their SEC filings:

- Francis' statement: "We are also providing variable marketing cost and customer care enrollment cost per approved Medicare equivalent and Individual & Family Plan equivalent member respectfully – respectively, excuse me," MJOP Ex. 1 at 8;

- Flanders' statement: "The key priorities for the team include expansion of marketing channels with an emphasis on adding new strategic partners, technology enhancement, including extending our online enrollment capabilities to additional carriers and increasing the efficiency of our customer care and enrollment team with a goal to boost conversion and group retention," (a statement that was previously provided to the Court on page 7 of Exhibit 26 of the Motion to Dismiss), *id.* at 7; and

- The boilerplate language: "Forward-looking statements are subject to risks and uncertainties that could cause actual results to differ materially from those projected in our forward-looking statements.  We describe these and other risks and uncertainties in our annual report on Form 10-K and quarterly reports on Form 10-Q filed with the Securities and Exchange Commission, which you may access through the SEC website or from the Investor Relations section of our website.  We will be presenting certain financial measures on this call that will be considered non-GAAP under SEC Regulation G.  For reconciliation of each non-GAAP financial measure to the most directly comparable GAAP financial measure, please refer to the information included in our press release and in our SEC filings, which can be found in the About Us section of our corporate website under the heading Investor Relations," MJOP Ex. 1 at 4.

These statements do not change the Court's holding; the argument remains unavailing.  The "new" statements do not disclose that there are additional costs associated with eHealth's commission receivables.  Nor does the boilerplate language at the beginning of the earnings call referring investors to the SEC filings.  *See In re Apple Comput., Inc. Sec. Litig.*, 2003 WL 26111982, at *2 (referring to SEC filings generally for cautionary language does not sufficiently place investors on notice of risks).

Defendants' reliance on the supposedly new information of a line item for "customer care and enrollment" in the April 26, 2018 press release is blatantly misleading – they previously provided the Court with eHealth's Form 10-K for the year ended December 31, 2017 that contained a line item for "customer care and enrollment."  *Compare* MJOP Ex. 2 at 8, *and* MJOP Ex. 3 at 45,

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S
NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV.
P. 12(C) - 4:20-cv-02395-JST                                                              - 8 -
4892-0860-1932.v2

*with* MTD Ex. 10 at 45.  These passing references and contradictory statements failed to disclose that there were in fact additional costs associated with eHealth's commission receivables, and were insufficient to reduce the risk of misleading to "nil."  *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991) ("not every mixture with the true will neutralize the deceptive.  If it would take a financial analyst to spot the tension between the one and the other, whatever is misleading will remain materially so, and liability should follow.").

Defendants' arguments concerning the February 20, 2020 statement are no different.  On February 20, 2020, Yung explicitly stated that "there's no other cost associated" and Flanders immediately followed "There's no cost against" the receivable commissions, "the costs have been expensed in period.  And it's all cash to be collected free of additional charge."  ¶91.  Again, Defendants now point to three additional statements in the earnings call to prove that the operational expenses were disclosed:

- Yung's statement: "Now I will review our operating expenses and profitability metrics. . . . Customer care and enrollment costs per approved Medicare member grew 13% in 2019 compared to 2018," MJOP Ex. 4 at 7;

- Yung's statement: "At the same time, we will continue to invest for growth in our telesales capacity and marketing with combined marketing and customer care enrollment expenses growing roughly in line with projected 2020 revenue growth," *id.* at 9; and

- The boilerplate language at the beginning of the earnings call, which is identical to the language contained in the third bullet point above, *id.* at 4.

The Court already possessed the statement by Yung listed in the first bullet point above.  MTD Ex. 8 at 8.  On its face, the quote does not disclose the existence of operating costs associated with the commission receivables.  The "new" statements provided by Defendants (listed in the second and third bullet point above) do little to change the Court's previous analysis.  Yung's statement in the second bullet point does not show that Defendants disclosed operational expenses.  *See* MJOP Ex. 4 at 9.  And the boilerplate language in the third bullet point given at the beginning of the earnings call, like the previous statements, does not adequately inform investors about operational expenses.  *See Apple*, 2003 WL 26111982, at *2 (referring to SEC filings generally for

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C) - 4:20-cv-02395-JST                                                      - 9 -
4892-0860-1932.v2

cautionary language does not sufficiently place investors on notice of risks).  Defendants have failed to present any reason for the Court to change it's already sound analysis of these statements.

The fact remains that Defendants failed to make specific disclosures regarding the operating costs during the earnings calls or in its SEC filings.  Defendants' cited authority is unpersuasive, as those defendants made ***specific and detailed*** disclosures about the topic plaintiffs were alleging was omitted.  MJOP at 10; *see Par Inv. Partners, LP v. Aruba Networks, Inc.*, 681 F. App'x 618, 619 (9th Cir. 2017) (finding that defendants disclosed the specific competitive threat posed by another company); *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) (holding that defendants made its disclosures clear to investors).  Here, the Court has already held Defendants did not do the same.  They did not make a specific and detailed disclosure during the earnings call or in its public filings that, as the Court held, "eHealth did not have to incur any costs that had to be offset against the commissions it expected to receive from insurance companies."  MTD Order at 15.

Defendants cite several cases to argue that this additional context is critical to proving that these statements did not create "an impression of a state of affairs that differs in a material way from the one that actually exists."  *Brody*, 280 F.3d at 1006 (9th Cir. 2002).  Defendants' cases are all distinguishable.  First, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190-91 (2015) analyzes expressions of opinion.  The remaining misleading statements are not expressions of opinion.  Even if they were, the statements can still be actionably misleading if the defendants chose to "tout positive information to the market" without disclosing adverse information, as here.  *Omnicare*, 575 U.S. at 189-91; *see also Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 707-09 (9th Cir. 2016) ("'[O]nce defendants choose to tout' positive information to the market, 'they are bound to do so in a manner that wouldn't mislead investors', including disclosing adverse information that cuts against the positive information.'"); *Vignola v. FAT Brands, Inc.*, 2019 WL 6888051, at *10 (C.D. Cal. Dec. 17, 2019) (holding that a reasonable person could have been misled by the omission of adverse information).  Second, the Court in *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) held "'only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ are these issues

appropriately resolved as a matter of law.'" Here, Defendants' alleged "disclosure" is simply not so obvious that this can be resolved as a matter of law. Lastly, *DeMaria v. Andersen* evaluated whether the defendants had a duty to disclose to comply with SEC regulations, which is simply not an issue here. *See DeMaria v. Andersen*, 318 F.3d 170, 180 (2d Cir. 2003).

**b.    The Concealed Operational and Post-Enrollment Retention Expenses Were Material**

Defendants also repeat their argument that because the Complaint fails to quantify the concealed operational or post-enrollment retention expenses, or allege any facts to show such expenses were material, Defendants' statements were neither false nor misleading. *Compare* MJOP at 11, *with* MTD Order at 15 (arguing that operational expenses associated with ongoing customer care had no impact on revenue recognition and thus were immaterial). The Court has already rejected this argument. MTD Order at 15-16.

Although the inquiry should end there, the argument also fails on the merits. Defendants suggest that the Private Securities Litigation Reform Act's particularity requirement necessitates precise quantification to show materiality. But that is not the law. While a Complaint must allege with particularity the severity and materiality of a problem and whether it had an impact on revenue, there is no requirement that it be quantified to a tee. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1018 (9th Cir. 2005) (rejecting assertion that absence of allegations quantifying revenue discrepancies essential to surviving a motion to dismiss where plaintiffs provided other specific allegations about impact on business).

Here, the Court has already held that Plaintiff has sufficiently alleged the severity of the post-enrollment retention expenses and its impact on eHealth's business. *See* MTD Order at 19. And contrary to Defendants' characterizations, the Complaint does provide specific numbers: eHealth's commissions receivable ranged between approximately $158 million to $466 million per year; its operational expenses ranged from approximately $200 million to $400 million per year; and its operational expenses related to customer care and enrollment ranged between approximately $48 million and $134 million per year, comprising a material portion of both its commissions receivable and total operational expenses. ¶¶30-33. The Complaint further avers that eHealth understated

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C) - 4:20-cv-02395-JST                                                                    - 11 -
4892-0860-1932.v2

operating costs, which put them at a $181 million operating loss – a clear, quantifiable indication that these costs had a severe impact on revenue that Defendants concealed. *See, e.g.*, ¶¶6, 96. The Complaint has both quantified and qualified the materiality of concealed operational expenses. *See, e.g.*, ¶¶6, 31-33, 43, 69-72, 92-93, 96.

Defendants' authority is inapposite. MJOP at 11. The complaint in *In re Silicon Graphics Inc. Sec. Litig.* contained the same "boilerplate [paragraph]" about unspecified "negative internal reports" as five other class actions. 183 F.3d 970, 984 n.13 (9th Cir. 1999). Unlike here, there were no facts corroborating that Plaintiff's allegations, only a statement that the allegations were predicated on counsel's review of filings and a "'belie[f] that substantial evidentiary support will exist for the allegations after a reasonable opportunity for discovery.'" *Id.* at 985. In *McGovney v. Aerohive Networks, Inc.*, the complaint failed not for lack of allegations about quantities, but primarily because that court found the CW's upon which the complaint entirely relied lacked personal knowledge and reliability. 367 F. Supp. 3d 1038, 1052-53, 1057 (N.D. Cal. 2019). And in *In re Twitter, Inc. Sec. Litig.*, there was less than a four week period between the technical change that triggered revenue decline and the alleged false and misleading statements, which led the court to conclude it was implausible defendants could accurately determine the change's impact based on a single month's data. 506 F. Supp. 3d 867, (N.D. Cal. 2020), *aff'd sub nom. Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022). Here, there is no such implausible time frame for gathering data, as the revenue recognition policy began in January 2018, and the two statements are months and years later.

Because Defendants' arguments and case law are neither new nor persuasive, the reasonable inference remains that Defendants' statements that they had no operational expenses to offset against commissions receivable created "an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *See Brody*, 280 F.3d at 1006.

### c.     The Statements Were Not Made in the Context of ASC 606

Defendants also argue, again, that the statements were made in the context of ASC 606 and thus were not false or misleading, an argument already rejected by the Court. MJOP at 11-14; MTD

at 19-20; MTD Order at 17.   While Defendants say that they are now submitting complete transcripts, rather than excerpts, Defendants predominantly cite to pages the Court *already possessed* when deciding the motion to dismiss: *compare* MJOP Exs. 1, 8, 4 *with* MTD Exs. 26, 2, 8.  In their two and a half pages of argument, Defendants provide only two citations – pages 5 and 9 in Exhibit 1 – that were not already in the Court's possession.  MJOP at 11-14.  These "new" pages are from the April 2018 call only – none are from the February 2020 call.  Because Defendants cite no new materials with respect to ASC 606 on the February 2020 call, there is no reason to reconsider the Court's holdings as to those statements.

With respect to the April 2018 call, the additional mention of new accounting convention ASC 606 at the outset of the call does not limit the call or any statements therein to the mechanics of revenue recognition under ASC 606.  *See* MTD Order at 15-16.  Nowhere do Defendants clarify that ASC 606 is their sole basis for understanding the health of their business and the impact of operational expenses on revenue.  This was the basis for the Court's Order.  And it remains the same now.  Thus, construing the statements in light most favorable to Plaintiff, the statements still create the misimpression that operational expenses in general had no impact on revenue.  *See id*.  Even assuming the full transcript provides some additional context for the April 26, 2018 statement, it does not change the outcome, and therefore should not be grounds for granting Defendants' motion. *See In re Celera Corp. Sec. Litig.*, 2013 WL 4726097, at *3 (N.D. Cal. Sept. 3, 2013) (holding "because this more complete understanding of the facts [detailed in already submitted SEC filings] would not have changed the outcome, leave to file a reconsideration motion on this ground is denied").

At best, Defendants create a factual dispute as to whether the Defendants spoke more broadly about operational expenses or limited their discussion to the mechanics of revenue recognition under ASC 606.  But "[a] pleadings motion is not the proper venue to resolve the parties' competing factual contentions." *Erhart*, 387 F. Supp. 3d at 1053-54.  Because at most there exists a dispute of fact as to whether the statements were made in a broader context or confined to ASC 606, and because at this stage of proceedings the allegations are construed the light most favorable to

Plaintiff, the Court must deny the motion for judgment on the pleadings. *Id.* (questions of fact precluded resolving fraud claims in 12(c) motion).

### 3. The Complaint Adequately Pleads Scienter

#### a. The Court's Order Regarding Plaintiff's Scienter Allegations Was Correctly Decided

Defendants again raised "the very same points but more loudly" with regards to scienter. *See Sheet Metal Workers Nat' Pension Fund et al. v. Bayer Aktiengesellschaft, et al.*, 2021 WL 5302525, at *1 (N.D. Cal. Nov. 15, 2021). Defendants assert that the Complaint's scienter allegations do not warrant a core operations inference and the allegations regarding compensation are inadequate to establish scienter – arguments the Court already considered and rejected. *Compare* MJOP at 15-16, *with* MTD Order at 19-20.

Defendants also argue that the Complaint fails to provide any specific factual basis that would support the inference that post-enrollment member retention expenses were misrepresented or were significant – another argument rejected by the Court. MJOP at 15; MTD Order at 19 (holding "During the Class Period, eHealth's commissions receivable ranged between approximately $158 million to $466 million per year, whereas its operational expenses ranged from approximately $200 million to $400 million per year, with operational expenses related to customer care and enrollment ranging between approximately $48 million and $134 million per year). Under these circumstances, it remains "absurd" to suggest that management was without knowledge given the magnitude of the operational expenses. *See S. Ferry LP #2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008); *see also Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 988 & n.5 (9th Cir. 2008); *In re Plantronics, Inc. Sec. Litig.*, 2022 WL 17974627, at *13 (N.D. Cal. Nov. 7, 2022) (Tigar, J.) (denying the defendant's motion for reconsideration and holding "the excess channel inventory that accumulated during the Class Period . . . was of a magnitude that would have materially impacted revenues during the Class Period, and that, as a result, it would have been 'absurd' for individual Defendants, who served as CEO and CFO of the Company, not to have known about the undisclosed sales practice that allegedly caused it."). The Court unequivocally disagreed with Defendants' contention that Plaintiff

could not rely on the core operations doctrine, MTD Order at 19, Defendants have presented no reason for the Court to deviate from its previous finding.[3]

Defendants argue (as they did in their Motion to Dismiss) that general allegations of equity compensation are inadequate to support a finding of scienter. MTD at 23-25 ("Plaintiff's miscellaneous scienter allegations based on general executive compensation or the desire to raise capital can be quickly dismissed."); MJOP at 16. The Complaint adequately alleges that between the insider sales and equity compensation awards, Defendants and other eHealth executives walked away with nearly $65 million in illicit proceeds. ¶¶113-138. Importantly, the Court explicitly held in its Order "that the complaint contains other allegations that further support a finding that Plaintiff has adequately pleaded scienter as to the April 26, 2018, and February 20, 2020, challenged statements. For example, Plaintiff alleges that the Individual Defendants were motivated to inflate eHealth's stock price because their compensation and their ability to profit from sales of their eHealth stock depended on eHealth's financial performance." MTD Order at 20 n.5. Defendants have presented no reason to deviate from the Court's prior finding that Plaintiff adequately pleaded scienter.[4] *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Cal.*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) ("Motions to reconsider are also 'not vehicles permitting the unsuccessful party to "rehash" arguments previously presented.'").

The Court's analysis regarding scienter should conclude here. But even considering Defendants' newly raised scienter arguments as discussed below, Plaintiff has still adequately pled an inference of scienter.

---

[3]   Defendants' cited authority *In re Twitter*, 506 F. Supp. 3d at 889 and *Knox v. Yingli Green Energy Holding Co.*, 2016 WL 6609210, at *13 (C.D. Cal. May 10, 2016) is inapplicable. Both cases held that the financial impact of the issue in dispute was negligible or not dramatic enough that it would raise to the attention of the defendants. That is not the case here. For example, as alleged, the changes allowed for eHealth to eliminate its net loss of $4.88 million and changed it to a $304 thousand gain in 2016 and a complete reversal of eHealth's $25.4 million net loss to a $25.4 million gain in 2017. ¶¶30-32. This had a large impact on eHealth's bottom line.

[4]   Defendants rely upon *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) to state that the Court must consider plausible opposing inferences. However, the Plaintiff's inference "need not be irrefutable . . . or even the most plausible." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Most importantly, "a tie must go to the Plaintiff." *Maiman v. Talbott*, 2010 WL 11421950, at *5 (C.D. Cal. Aug. 9, 2010) (quotations omitted).

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C) - 4:20-cv-02395-JST
4892-0860-1932.v2

- 15 -

### b.　Defendants' Newly Raised Scienter Arguments Are Unavailing

The only two arguments Defendants did not previously raise regarding scienter also fail. MJOP at 14-15. "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking gun' genre, or even the 'most plausible of competing inferences.'" *Tellabs*, 551 U.S. at 324. "The PSLRA calls for a 'strong inference,' not an outright confession or an airtight case." *In re Network Assocs., Inc., Sec. Litig.*, 2000 WL 33376577, at *8 (N.D. Cal. Sept. 5, 2000). A complaint will survive if "[w]hen the allegations are accepted as true and taken collectively, . . . a reasonable person [would] deem the inference of scienter at least as strong as any opposing inference." *Tellabs*, 551 U.S. at 326. The Court should "consider the totality of circumstances, rather than . . . develop separately rules of thumb for each type of scienter allegation." *S. Ferry LP, #2*, 542 F.3d at 784. Indeed, the relevant inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323; *see also Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1045 (N.D. Cal. 2016) (Tigar, J.) ("While each of these allegations alone might be insufficient to plead a 'cogent and compelling' claim of scienter, taken as a whole . . . they meet the standard . . . .").

Defendants now argue that the Complaint's allegation that Defendants concealed the existence of post-enrollment customer care expenses is implausible and thus, Plaintiff fails to plead scienter. MJOP at 14. But the Court has already held that Plaintiff's allegations were plausible, MTD Order at 14-17, and thus, disagreed with Defendants' suggestion that the allegations were implausible because they had "no basis in logic or common [sense]." MJOP at 14-15 (citing *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020)). Plaintiff has adequately alleged that a reasonable investor could have been misled by the statements into believing that eHealth did not incur any expenses during the earnings call. *See* MTD Order at 15. At a minimum, Defendants argument creates a dispute of fact that is improper to resolve at this stage. *See Hal Roach Studios*, 896 F.2d at 1550.

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S
NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV.
P. 12(C) - 4:20-cv-02395-JST
4892-0860-1932.v2

- 16 -

Defendants also argue that the Complaint is devoid of specific contemporaneous statements that demonstrated the intentional or deliberate reckless false or misleading nature of the statements. MJOP at 15.  Defendants assert that the statements give rise to the inference that Defendants were merely trying to explain eHealth's application of ASC 606 rather than an inference of scienter.  *Id.* But the alleged statements were not made in the context of ASC 606, but rather were made in the broader context of whether eHealth had any expenses in general that would need to be offset.  At best, Defendants' position creates a question of fact that the Court cannot address at this stage.  *See Hal Roach Studios*, 896 F.2d at 1550.[5]

Plaintiff's inference of scienter is easily "at least as compelling" as Defendants' inference of nonfraudulent intent, and a tie must go to the plaintiff.  *Tellabs*, 551 U.S. at 314; *Maiman*, 2010 WL 11421950, at *5.  When considered holistically in the manner required under *Tellabs*, the Complaint's inference of scienter is at least as compelling as any non-culpable inference.  *Tellabs*, 551 U.S. at 322-23.[6]

### 4.    The Complaint Adequately Pleads Loss Causation

Defendants' claim that the Complaint fails to plead loss causation – an argument they did not even attempt to make in their original Motion to Dismiss – is meritless.  MJOP at 17-18.  Pleading loss causation "requires no more than the familiar test for proximate cause."  *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018).  Pleading loss causation is "not meant

---

[5]    Defendants' authority again is distinguishable.  *In In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d at 883, the plaintiffs alleged that the defendants were aware of a study results because they had access to the clinical trial information.  This is not a case where all that was pled was that the defendants simply had access to the information that they may or may not have been aware of.  As the Court previously held, it was the "magnitude of the operational expenses at issue" that made Defendants, as "the company's CEO, CFO, and COO, . . . aware of them and the importance of disclosing them to investors."  MTD Order at 19.  And, *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1088 (9th 2002) is inapplicable because the Complaint does not rely on a "general allegation that management was informed about important issues in the company," but rather specific allegations surrounding eHealth expenses and the importance to Defendants and the Company.  *Id.*; *see also S. Ferry LP, No. 2*, 542 F.3d at 783 (holding "allegations may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information").

[6]    For the reasons listed above, Plaintiff also adequately pleads a strong inference of scienter for scheme liability.  ¶¶155-156.  Defendants failed to raise this issue in their MTD, and provide no reason why the Court should reconsider its prior ruling.  MJOP at 16 n. 8.

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C) - 4:20-cv-02395-JST

- 17 -

4892-0860-1932.v2

to impose a great burden upon a plaintiff," but to "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). In general, "loss causation is a fact-intensive inquiry better suited for determination at trial than at the pleading stage." *Rudolph v. UTStarcom*, 2008 WL 4002855, at *4 (N.D. Cal. Aug. 21, 2008). "A plaintiff is not required to show 'that a misrepresentation was the sole reason for the investment's decline in value' in order to establish loss causation." *Daou*, 411 F.3d at 1025 (9th Cir. 2005). "'[A]s long as the misrepresentation is one substantial cause of the investment's decline in value, other contributing forces will not bar recovery under the loss causation requirement' but will play a role 'in determining recoverable damages.'" *Id.* A plaintiff must simply provide "'fair notice'" of the "relevant economic loss" and what the causal connection "might be between that loss and the misrepresentation." *Dura*, 544 U.S. at 346-47; *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014), *as amended* (Sept. 11, 2014) ("At the pleading stage, however, the plaintiff need only allege that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors."); *In re Banc of Cal. Sec. Litig.*, 2017 WL 3972456, at *9 (C.D. Cal. Sep. 6, 2017) ("Judicial precedent appears to support a more lenient pleading standard for loss causation, requiring only that the complaint provide defendants with fair notice of the claims against them and the grounds for those claims.").

The Complaint easily satisfies these pleading requirements. Plaintiff alleges that Defendants' false and misleading statements artificially inflated the price of eHealth stock. ¶143. The inflation dissipated from eHealth's stock from two partial corrective disclosures that revealed the falsity of Defendants' statements and disclosed the truth that Defendants had hidden from the market. ¶¶6-7, 48-67, 143-146. First, on April 7, 2020, Muddy Waters Capital, a well-respected research firm, published a report revealing eHealth's accounting misconduct, including that eHealth's financial statements: (a) overstated revenue by $128 million; (b) overstated spending profit by $263 million; and (c) understated an operating loss of $181 million. ¶¶6, 48-61. The Muddy Waters Report also specifically discussed that eHealth "pretends that ongoing service needs, which carry real costs, do

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S
NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV.
P. 12(C) - 4:20-cv-02395-JST                                                                                    - 18 -
4892-0860-1932.v2

not exist" and that eHealth's revenue recognition practice "'ignores the reality that EHTH needs to provide ongoing service to members and conduct outreach. . . to retain them.'"  ¶¶57-58.  As the Court has held, the Muddy Waters report "resulted in a sharp decline in the price of eHealth's stock" (MTD Order at 3), specifically from a closing price of $130.57 per share on April 6, 2020 to $116.90 per share on April 7, 2020.  ¶61.

Second, on July 23, 2020, eHealth announced its earnings results for the second quarter of 2020, which "confirmed" various aspects of the Muddy Waters report, including that "eHealth had to provide ongoing services to existing members and conduct outreach to them to retain them."  ¶¶7, 62-65.  On this news, eHealth's stock price declined from a closing price of $114 per share on July 23, 2020 to $79.17 per share on July 24, 2020.  ¶67.

These disclosures – which directly undermine Defendants' false statements concealing the operating costs that eHealth had incurred to retain members and had to offset against any commissions it received from insurance companies – are specifically alleged to have caused the above significant declines in eHealth stock.  ¶¶143-146.  These allegations more than adequately provide Defendants with the requisite "indication" of the casual connection that Plaintiff "[have ]in mind."  *Dura*, 544 U.S. at 347.

Defendants' new claim that the Muddy Waters Report cannot "constitute a corrective disclosure as a matter of law" is specious – and one that was curiously absent from their MTD. MJOP at 17.  Courts have repeatedly held that reports from third party research firms – specifically Muddy Waters and so called "short sellers" – may constitute corrective disclosures.  *See Henning v. Orient Paper, Inc.*, 2011 WL 2909322 at *8 (C.D. Cal. July 20, 2011) (denying motion to dismiss on for failure to plead loss causation where the alleged truth was revealed by a Muddy Waters report); *In re Banc of Cal. Sec. Litig.*, 2017 WL 3972456, at *10 ("the Court isn't willing to close the courthouse to any investor who was defrauded simply because the fraud was revealed by a short-seller – no matter how thorough the short-seller's research or how compelling the short-seller's conclusions" and holding that "the 29% stock price drop that happened within 1 day of the publication . . . is enough for Plaintiff to 'plausibly allege that the defendant's fraud was revealed to

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C) - 4:20-cv-02395-JST                                                                              - 19 -
4892-0860-1932.v2

the market and caused the resulting losses.'"); *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 742 (9th Cir. 2022) ("As the Ninth Circuit has explained, '[t]hat a stock price drop comes immediately after the revelation of fraud can help to rule out alternative causes.' So it is here. It is plausible that the Seeking Alpha article and Scorpion Capital report caused the stock price drop due to their timing; taking as true the allegations, that means that the revelation of alleged fraud was at least a substantial cause of the loss of value.") (alteration in original).

Importantly, Defendants do not even attempt to address the second alleged corrective disclosure on July 23, 2020, in which (as discussed above) Defendants confirmed many aspects of the Muddy Waters Report, including the issues of ongoing retention expenses. *See Longo v. Osi Sys. Inc.*, 2021 WL 1232678, at \*10 (C.D. Cal. Mar. 31, 2021) (third-party report properly considered a corrective disclosure where the report "'disclosed verifiable facts and documents about the Albanian contract from sources that were not reasonably available to investors – many of which [the Company] ultimately confirmed itself'"). Nor do Defendants dispute the significance of the declines in eHealth's stock price in response to either of the alleged corrective disclosures, or offer any alternative explanations for the stock price movements. "That a stock price drop comes immediately after the revelation of fraud can help to rule out alternative causes." *First Solar*, 881 F.3d at 754.

Defendants' reliance upon *In re: BofI Holdings, Inc. Sec. Litig.*, 977 F.3d 781, 797 (9th Cir. 2020) *cert. denied*, _ U.S. _, 142 S. Ct. 71, 211 L. Ed.2d 11 (2021) to argue that the Muddy Waters Report cannot "constitute a corrective disclosure as a matter of law" is belied by the 9th Circuit's holding in that case. MJOP at 17. The Court actually rejected any "bright-line rule," and "decline[d] to categorically disqualify . . . blog posts as potential corrective disclosures," instead adopting a "a flexible approach to evaluating corrective disclosures" that asks "[b]ased on plaintiffs' particularized allegations, can we plausibly infer that the alleged corrective disclosure provided new information to the market that was not yet reflected in the company's stock price?" *BofI Holding*, 977 F.3d at 795. Here, unlike the "anonymous" blog posts in *BofI*, which all claimed to be based on "publicly available sources," (*id.* at 794) the Muddy Waters Report was published by a "well-known and highly respected research firm" that relied in part on interviews with former eHealth executives,

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C) - 4:20-cv-02395-JST                                                                 - 20 -
4892-0860-1932.v2

and its conclusions were later confirmed by the Company.  ¶¶6, 48-61.  Defendants do not dispute that the Muddy Waters Report "provided new information to the market" (the test set forth in *BofI*) or that the well-sourced research report caused a significant decline in eHealth's stock price.  *BofI Holding*, 977 F.3d at 795.

Finally, Defendants argue that the Complaint does not allege that the truth regarding eHealth's concealment of retention expenses has ever been revealed.  MJOP at 17-18.  This is simply not true.  The Complaint specifically alleges this issue was disclosed in the Muddy Waters Report and confirmed by the Company on July 23.  ¶¶57-58, 62-65.  These allegations are adequate to plead a causal link.  "'To be corrective, the disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company.'"  *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 at 1210 (9th Cir. 2016); *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *22 (N.D. Cal. Nov. 27, 2018) (loss causation alleged where there is "no dispute that the revelation of [information previously concealed by fraud] was a substantial factor in causing the [stock price decline]").

### 5.    The Complaint Adequately Pleads a §20(a) Claim

Defendants, again, repeat the exact same argument they made in their Motion to Dismiss – "Plaintiff's failure to state a predicate claim under Section 10(b) requires dismissal of its Section 20(a) claim."  *Compare* MTD at 25 n.19 *with* MJOP at 18.  Because Plaintiff has stated a §10(b) claim against Defendants, and this Court has already found that Plaintiff has done so, Plaintiff's §20(a) claim should be upheld once again by this Court.  *See Plantronics*, 2022 WL 17974627, at *13 (Tigar, J.) ("Because the Court's ruling as to the Section 10(b) claim stands, so does the Court's ruling as to the Section 20(a) claim.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion in its entirety.  Alternatively, Plaintiff requests leave to amend.  *See Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001).

DATED: January 26, 2023

ROBBINS GELLER RUDMAN
 & DOWD LLP
DOUGLAS R. BRITTON
LUCAS F. OLTS
RAPHAELLA FRIEDMAN
MEGAN A. ROSSI


                    s/ Lucas F. Olts
                  LUCAS F. OLTS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dougb@rgrdlaw.com
lolts@rgrdlaw.com
rfriedman@rgrdlaw.com
mrossi@rgrdlaw.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

Lead Counsel for Lead Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS EHEALTH, INC., FLANDERS, AND YUNG'S
NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV.
P. 12(C) - 4:20-cv-02395-JST                                                                         - 22 -
4892-0860-1932.v2

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 26, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Lucas F. Olts
LUCAS F. OLTS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  lolts@rgrdlaw.com

4892-0860-1932.v2

**Mailing Information for a Case 4:20-cv-02395-JST IN RE eHEALTH INC. SECURITIES LITIGATION**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,MAlbert@ecf.courtdrive.com,bengfelt@rgrdlaw.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Doug Britton**
  dougb@rgrdlaw.com,e_file_sd@rgrdlaw.com,bengfelt@rgrdlaw.com,ldeem@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Peretz Bronstein**
  peretz@bgandg.com

- **Timothy W. Brown**
  tbrown@thebrownlawfirm.net

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Andre Fontana**
  afontana@coblentzlaw.com,andre-fontana-9619@ecf.pacerpro.com

- **Raphaella Friedman**
  rfriedman@rgrdlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Judson Earle Lobdell**
  jlobdell@mofo.com,magdalena-blackmer-3352@ecf.pacerpro.com,judson-lobdell-6493@ecf.pacerpro.com,mblackmer@mofo.com

- **Adam Christopher McCall**
  amccall@zlk.com

- **Catherine Eugenia Moreno**
  cmoreno@wsgr.com,rlustan@wsgr.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,shawnw@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Lucas F. Olts**
  Lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com,LOlts@ecf.courtdrive.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com,fgravenson@poml

- **Nicholas Ian Porritt**
  nporritt@zlk.com,ecf@zlk.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Megan Allison Rossi**
  MRossi@rgrdlaw.com

- **Betty Chang Rowe**
  browe@wsgr.com

- **Dylan Grace Savage**
  dsavage@wsgr.com,lnicolini@wsgr.com

- **Whitney E. Street**
  WhitneySt@hbsslaw.com,whitney-street-0082@ecf.pacerpro.com

- **Jacob Allen Walker**
  jake@blockleviton.com,jake@ecf.courtdrive.com

- **Gregory Lewis Watts**
  gwatts@wsgr.com,ysheard@wsgr.com,rcarter@wsgr.com

- **Anna Erickson White**
  awhite@mofo.com,anna-erickson-white-9788@ecf.pacerpro.com,andrea-vickery-5658@ecf.pacerpro.com,avickery@mofo.com

- **David Jeremy Wiener**
  dwiener@mofo.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)