CATHERINE E. MORENO, State Bar No. 264517
DYLAN G. SAVAGE, State Bar No. 310452
BETTY CHANG ROWE, State Bar No. 214068
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100
Email: cmoreno@wsgr.com
         dsavage@wsgr.com
         browe@wsgr.com

GREGORY L. WATTS, State Bar No. 197126
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Facsimile:  (206) 883-2699
Email: gwatts@wsgr.com

*Attorneys for Defendants eHealth Inc.,
Scott N. Flanders, and Derek N. Yung*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE eHEALTH, INC. SECURITIES LITIGATION | CASE NO.:  4:20-cv-02395-JST |
| | **DEFENDANTS eHEALTH, INC., FLANDERS, AND YUNG'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADIINGS UNDER FED. R. CIV. P. 12(c)** |
| | Hearing Date:  March 16, 2023 |
| | Time:  2:00 p.m. |
| | Courtroom:  6 |
| | Honorable Jon S. Tigar |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 1

       A.    THE RULE 12(c) MOTION IS PROPER AND DOES NOT SEEK
             RECONSIDERATION OF THE COURT'S PRIOR ORDER ............................... 1

       B.    THE RULE 12(c) MOTION WAS NOT MOTIVATED TO DELAY
             DISCOVERY .............................................................................................. 6

       C.    THE COMPLAINT FAILS TO PLEAD THAT THE APRIL 26, 2018 OR
             FEBRUARY 20, 2020 STATEMENTS WERE FALSE OR MISLEADING........ 7

             1.    Defendants' Rule 12(c) Motion Does Not Create Issues of Fact ................ 7

             2.    Defendants Disclosed eHealth's Operational Expenses, Including
                   Customer Care and Enrollment, During the April 2018 and February
                   202 Earnings Calls, and in SEC Filings Referenced Therein .................... 9

             3.    The Complaint Fails to Allege Facts Showing That eHealth Incurred
                   Material Post-Enrollment Retention Expenses ......................................... 10

             4.    The Statements Were Not Misleading Because They Were Made
                   From an Accounting Perspective in the Context of ASC 606 and
                   Revenue Recognition ................................................................................. 10

       D.    THE COMPLAINT FAILS TO ALLEGE SCIENTER IN CONNECTION
             WITH THE APRIL 26, 2018 AND FEBRURY 20, 2020 STATEMENTS ......... 11

       E.    THE COMPLAINT FAILS TO ALLEGE LOSS CAUSATION ......................... 13

III.   CONCLUSION .......................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) ................................................................................... 12

*Bruton v. Gerber Prods. Co.*,
    2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ............................................................. 5

*Carr v. Zosano Pharma Corp.*,
    2021 WL 3913509 (N.D. Cal. Sept. 1, 2021) ......................................................... 12

*City of Almaty, Kazakhstan v. Ablyazov*,
    2019 WL 1430155 (S.D.N.Y. Mar. 29, 2019) .......................................................... 8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012) ................................................................. 11

*Cozzarelli v. Inspire Pharm. Inc.*,
    549 F.3d 618 (4th Cir. 2008) ................................................................................... 2

*Dekker v. Vivint Solar, Inc.*,
    542 F. Supp. 3d 959 (N.D. Cal. 2021) .................................................................... 2

*DeMaria v. Andersen*,
    318 F.3d 170 (2d Cir. 2003) .................................................................................... 2

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ............................................................................................... 15

*Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
    353 F.3d 1125 (9th Cir. 2004) ............................................................................... 10

*Erhart v. BofI Holding, Inc.*,
    387 F. Supp. 3d 1046 (S.D. Cal. 2019) ............................................................. 8, 14

*Fox v. Piche*,
    2008 WL 4334696 (N.D. Cal. Sept. 22, 2008) ........................................................ 5

*Gardner v. Major Auto. Cos.*,
    2012 WL 1230135 (E.D.N.Y. Apr. 12, 2012) ......................................................... 7

*Harris v. Cnty. of Orange*,
    682 F.3d 1126 (9th Cir. 2012) ................................................................................. 7

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) ............................................................................... 1, 8

*In re Apple Computer Sec. Litig.*,
    886 F.2d 1109 (9th Cir. 1989) ............................................................................. 9, 10

*In re BofI Holdings, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020) ................................................................................. 14

*In re Donald J. Trump Casino Sec. Litig. - Taj Mahal Litig.*,
   7 F.3d 357 (3d Cir. 1993) ................................................................................... 2

*In re Dropbox Sec. Litig.*,
   2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) .................................................... 10

*In re Intel Corp. Sec. Litig.*,
   2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) ..................................................... 2

*In re LifeLock, Inc. Sec. Litig.*,
   690 F. App'x. 947 (9th Cir. 2017) ....................................................................... 8

*In re Nektar Therapeutics Sec. Litig.*,
   34 F.4th 828 (9th Cir. 2022) .............................................................................. 14

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
   2018 WL 7019481 (N.D. Cal. Oct. 16, 2018),
   *aff'd*, 806 F. App'x 603 (9th Cir. 2020) ............................................................... 2

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ............................................................................. 13

*In re QuantumScape Sec. Class Action Litig.*,
   580 F. Supp. 3d 714 (N.D. Cal. 2022) .............................................................. 14

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ............................................................................. 10

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................... 5

*In re Splunk Inc. Sec. Litig.*,
   592 F. Supp. 3d 919 (N.D. Cal. 2022) ................................................................ 8

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ............................................................................... 2

*In re Toyota Motor Corp. Sec. Litig.*,
   2012 WL 3764903 (C.D. Cal. Feb. 21, 2012) ...................................................... 5

*Jackson v. Fong*,
   870 F.3d 928 (9th Cir. 2017) ............................................................................... 5

*Kmiec v. Powerwave Techs. Inc.*,
   2014 WL 12567781 (C.D. Cal. Feb. 11, 2014) .................................................... 5

*Local 353, I.B.E.W. Pension Fund v. Zendesk, Inc.*,
   2022 WL 614235 (9th Cir. Mar. 2, 2022) .......................................................... 13

*McGovney v. Aerohive Networks, Inc.*,
   2019 WL 8137143 (N.D. Cal. Aug. 7, 2019) ....................................................... 8

*McSherry v. City of Long Beach*,
   423 F.3d 1015 (9th Cir. 2005) ............................................................................. 8

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008)................................................................................................13

*Milan v. Clif Bar & Co.*,
489 F. Supp. 3d 1004 (N.D. Cal. 2020) ...................................................................................4

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020)..................................................................................................12

*O'Connor v. Uber Tech., Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014) .......................................................................................5

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ........................................................................................................2, 4, 10

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*,
774 F.3d 598 (9th Cir. 2014)....................................................................................................8

*Petrie v. Elec. Game Card, Inc.*,
761 F.3d 959 (9th Cir. 2014)....................................................................................................7

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014)................................................................................................13

*Prodanova v. H.C. Wainwright & Co.*,
993 F.3d 1097 (9th Cir. 2021)..........................................................................................12, 13

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014),
*overruled on other grounds by*
*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017)..................................................................................................12

*S. Ferry LP No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008)..................................................................................................12

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
531 U.S. 497 (2001) ..................................................................................................................5

*Somerville III v. West Town Bank & Trust*,
2020 WL 8256358 (D. Md. Dec. 4, 2020) ...............................................................................2

*Stoll v. County of Kern*,
2008 WL 4218492 (E.D. Cal. Sept. 8, 2008) ...........................................................................6

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018)..................................................................................................13

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)..................................................................................................13

**STATUTES**

15 U.S.C. § 78U-4(B)(3)(b) ...................................................................................................... 7

**RULES**

Fed. R. Civ. P. 54(b) ............................................................................................................... 6

**MISCELLANEOUS**

9 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 2373 (4th ed. 2022) ................................................................................................................................. 5

## I.    INTRODUCTION

In its order on Defendants' Rule 12(b)(6) motion to dismiss, ECF No. 64 ("MTD Order"), the Court dismissed all alleged misstatements other than three extemporaneous statements made in two earnings calls alleged to have created a misimpression that eHealth did not incur operational expenses in providing customer care for the purpose of customer retention.  The Court declined to dismiss these statements because the record before it at the time lacked:  (1) SEC filings identified in these earnings calls discussing these expenses, particularly same-day press releases that disclosed updated customer care and enrollment ("CC&E") expenses by total dollars, dollars per Medicare Advantage-equivalent member, and as a percentage of revenue; and (2) language sufficient to infer that the statements were made in the context of ASC 606.  MTD Order at 15-16.

Defendants are now providing the Court with this missing information.  Doing so now in a Rule 12(c) motion, along with other arguments not made in the prior motion (on loss causation and scienter), is proper.  These undisputed public disclosures show that the Complaint fails to plead that these statements were false or misleading and that Defendants are entitled to judgment as a matter of law.

## II.    ARGUMENT

### A.    THE RULE 12(c) MOTION IS PROPER AND DOES NOT SEEK RECONSIDERATION OF THE COURT'S PRIOR ORDER

Plaintiff argues that Defendants' Rule 12(c) motion is a "thinly veiled" motion for reconsideration. Opp. at 1.  Not so.  After taking all the allegations in the Complaint as true and in full context and consideration of Defendants' uncontested public disclosures, Defendants are entitled to judgment as a matter of law because the Complaint does not allege a cognizable legal theory or sufficient facts to state a claim under the PSLRA.  *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999) (affirming judgment on the pleadings was appropriate when complaint "fail[ed] to satisfy the rigorous pleading standards of" the PSLRA); Mot. at 7 (citing authority).

*First*, unlike Plaintiff's authority, Defendants' Rule 12(c) motion does not argue that the Court erred in its legal reasoning or analysis of the facts before it in ruling on the motion to dismiss

in its MTD Order.[1]  Instead, Defendants argue that the Court's correct legal reasoning and analysis in the MTD Order—that a decision as to whether Defendants' alleged public misstatements were false or misleading requires an examination of those statements in their full context, not in a vacuum, MTD Order at 13—when applied to a complete record, both as to the statements themselves and as to Defendants' other public statements made at the time, shows that the remaining statements were not false and could not have misled investors.  *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190-91 (2015) (alleged misstatement must be read "in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information" and "an omission that renders misleading a statement of opinion when viewed in a vacuum may not do so once that statement is considered, as is appropriate, in a broader frame"); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4, 1408-09 (9th Cir. 1996) (considering "full text" of documents); *In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *11 (N.D. Cal. Mar. 29, 2019) (citing company's public statements, reasoning that "the relevant context undermines plaintiff's allegations of falsity"); *In re Ocera Therapeutics, Inc. Sec. Litig.*, 2018 WL 7019481, at *5-6 (N.D. Cal. Oct. 16, 2018) (analyzing alleged misstatements in context of incorporated documents and rejecting plaintiffs' "selective reading"), *aff'd*, 806 F. App'x 603 (9th Cir. 2020); *see also infra* at 8.[2]

*Second*, contrary to Plaintiff's argument that Defendants "recycle" and "rehash" arguments made in their Rule 12(b)(6) motion, Opp. at 3-5, Defendants' Rule 12(c) motion makes new arguments and relies upon new information the Court did not consider in connection with the motions to dismiss.

---

[1] Plaintiff's cases involve Rule 12(c) motions that challenged the court's legal reasoning and analysis in a previous motion to dismiss.  *See, e.g.*, *Dekker v. Vivint Solar, Inc.*, 542 F. Supp. 3d 959, 967 (N.D. Cal. 2021) (the Rule 12(c) motion "explicitly contend[ed] that the court erred as a matter of law"); *Somerville III v. West Town Bank & Trust*, 2020 WL 8256358, at *1 (D. Md. Dec. 4, 2020) (defendants argued their Rule 12(c) motion was appropriate because the court's prior order conflicted with in-district decisions by other district court judges).

[2] *See also Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 625 (4th Cir. 2008) (must examine alleged misstatements in their "necessary context"); *DeMaria v. Andersen*, 318 F.3d 170, 180 (2d Cir. 2003) (considering "whether defendants' representations, taken together and in context, would have misl[ed] a reasonable investor about the nature of the [securities]"); *In re Donald J. Trump Casino Sec. Litig. - Taj Mahal Litig.*, 7 F.3d 357, 369 (3d Cir. 1993) ("a court must appraise a misrepresentation or omission in the complete context in which the author conveys it").

DEFS. EHEALTH, FLANDERS & YUNG'S REPLY ISO        -2-
RULE 12(C) MOTION; CASE NO. 4:20-CV-02395-JST

Plaintiff concedes that loss causation was not raised in the prior Rule 12(b)(6) motion. Opp. at 17. In light of the MTD Order reducing the Complaint's alleged misstatements (and any possible corresponding corrective disclosure) to those about post-enrollment operating expenses, Defendants raise loss causation for the first time in the Rule 12(c) motion. Mot. at 17-18.

With respect to scienter, the Rule 12(b)(6) motion argued that the confidential witnesses and alleged admissions did not plead a strong inference of scienter as to the Complaint's customer churn-related claims, ECF No. 47 at 20-23, and that Defendants' stock trading was not suspicious, *id*. at 23-24. The Rule 12(c) motion does not make these arguments. Instead, it argues that a motive to conceal operational expenses is implausible due to the ample and uncontested disclosures of such expenses in the Company's public statements, Mot. at 14-15; that Plaintiff fails to plead contemporaneous conditions at odds with Defendants' operational expense statements, *id*. at 15; that the more plausible inference is that Defendants were merely trying to explain the application of ASC 606, *id*.; and that Plaintiff fails to plead scheme liability, *id*. at 16 n.8. As Plaintiff concedes, these are "newly raised scienter arguments[.]" Opp. at 16. The only Rule 12(c) arguments that overlap with the Rule 12(b)(6) arguments are the minor points that Defendants' equity compensation, ECF No. 47 at 24 and Mot. at 16, and the core operations doctrine, ECF No. 47 at 11 and Mot. at 15-16, do not support a strong inference of scienter.

With respect to falsity, the briefing on the Rule 12(b)(6) motion focused almost exclusively on statements concerning customer churn and the ASC 606-related calculation of long-term value ("LTV"), ECF No. 47 at 10-19. As the Court recognized in its MTD Order, "Defendants d[id] not move to dismiss the claims on the basis that Plaintiff has not plausibly pleaded materiality[.]" MTD Order at 5 n.1. The Rule 12(c) motion, however, argues that the Complaint fails to allege facts showing that eHealth incurred material post-enrollment retention expenses that would have required disclosure. Mot. at 11. While the Rule 12(b)(6) motion argued that operational expenses are irrelevant to ASC 606 revenue recognition, MTD Order at 15 (describing Defendants' argument), it did not argue, as the Rule 12(c) motion does, that the alleged misstatements regarding operational expenses were made in the context of explaining ASC 606. Mot. at 11-14.

Having to deal with a wide swath of alleged misstatements, the Rule 12(b)(6) motion devoted only one paragraph to the topic of whether Defendants left investors with the false impression that eHealth had no post-enrollment operational expenses. ECF No. 47 at 19-20. In that argument, Defendants only cited portions of the Company's 2017 and 2019 10-Ks and certain earnings call transcripts. *Id.* at 19-20 & n.14. In this short argument, Defendants did not cite the February 20, 2020 earnings call transcript, only cited some of the relevant pages of the April 26, 2018 earnings call transcript (and not the page referencing the Company's SEC filings and same-day press release), did not cite the corresponding press releases for those earnings calls, did not cite the Company's 3Q19 10-Q, and only cited some of the relevant pages of the 2017 10-K. *Id.* These disclosures are now cited in the Rule 12(c) motion. Mot. at 9-10.

In its MTD Order, the Court denied Defendants' Rule 12(b)(6) motion as to three extemporaneous statements the Complaint alleged created a misimpression that eHealth does not have post-enrollment operational expenses for the purpose of customer retention. MTD Order at 14-17, 19-20. In doing so, the Court stated, based upon the materials before it at that time, that the challenged statements "were made during an earnings call and <u>without reference to any SEC filings in which Defendants disclosed operational expenses</u>," *id*. at 16 (emphasis added), and that the Defendants had not "pointed to any material" showing that these statements "were made in the context of the mechanics of revenue recognition under ASC 606." *Id*. at 15. Through this Rule 12(c) motion, Defendants are providing this missing information so that the Court can fully evaluate these three remaining alleged misstatements in their full context. *See Omnicare*, 575 U.S. at 191-90. Doing so now—with a new lead plaintiff appointed, a supplemental complaint on file, the pleadings closed, and early enough as to not delay trial—serves the interests of justice by applying the Court's reasoning in its prior MTD Order to closed pleadings and a complete record of the Company's disclosures, and promotes the conservation of judicial (and litigant) resources, before the parties spend millions of dollars litigating this case.

Plaintiff's cases are run-of-the mill examples of motions seeking reconsideration of the very same issues, arguments, and record. *See Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1008 (N.D. Cal. 2020) ("Nothing has changed since" court's denial of motion to strike nationwide class

allegations as premature); *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3764903, at *1 (C.D. Cal. Feb. 21, 2012) (similar); *Kmiec v. Powerwave Techs. Inc.*, 2014 WL 12567781, at *2 n.2 (C.D. Cal. Feb. 11, 2014).  None involve facts similar to those here, where the denial of a prior Rule 12(b)(6) motion was based on an incomplete record, the prior complaint was superseded by a supplemental complaint, and the Rule 12(c) motion presents new information the court previously indicated was relevant to the analysis and resolution of the issues.

Even if the Court were of the view that Defendants' Rule 12(c) motions would constitute impermissible motions for reconsideration under Local Rule 7-9 if they were directed at an unamended complaint, that is not the situation here.  Plaintiff filed a supplement to the Amended Complaint.  ECF No. 116.  "[A] supplemental complaint 'completely super[s]edes any earlier complaint, rendering the original complaint non-existent[.]'" *Jackson v. Fong*, 870 F.3d 928, 934 (9th Cir. 2017).  Due to Plaintiff's supplement, Defendants' motions could not be motions for reconsideration.  *See O'Connor v. Uber Tech., Inc.*, 58 F. Supp. 3d 989, 995-96 (N.D. Cal. 2014) (finding defendant's Rule 12(c) motion was not an impermissible motion for reconsideration due to intervening amended complaint); *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *7 n.2 (N.D. Cal. Jan. 15, 2014) (defendant "is not seeking reconsideration of the Court's prior Order, but rather is responding to [plaintiff's] new complaint").  Defendants were free to move against the supplemented operative complaint designated by the new lead plaintiff.  *See In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) ("When Plaintiffs filed the FACC, it superseded their previous complaint, and Sony was therefore free to move again for dismissal.").

Since the Court dismissed the other alleged misstatements with prejudice, MTD Order at 21-22, Defendants did not direct, and were not required to direct, their motions against them.  *See* 9 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 2373 n.7 (4th ed. 2022) ("'with prejudice' is an acceptable form of shorthand for 'an adjudication upon the merits'"); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001) ("the effect of the 'adjudication upon the merits' . . . is simply that, unlike a dismissal 'without prejudice,'" the dismissal bars the refiling of the same claim in the same court); *Fox v. Piche*, 2008 WL 4334696,

at *12 (N.D. Cal. Sept. 22, 2008) (striking claims previously dismissed with prejudice); *Stoll v. County of Kern*, 2008 WL 4218492, at *4 (E.D. Cal. Sept. 8, 2008) ("Plaintiff cannot bring a claim against Defendant . . . as that claim was previously dismissed with prejudice[.]").  Defendants instead have directed their motions at statements and other deficiencies that were not dismissed with prejudice in the Court's prior order.  Regardless, the Court has discretion pursuant to Rule 54(b) to consider Defendants' motion as to claims it did not previously dismiss with prejudice "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).

## B.   THE RULE 12(c) MOTION WAS NOT MOTIVATED TO DELAY DISCOVERY

Plaintiff argues that Defendants' Rule 12(c) motion is motivated "to delay discovery[.]"  Opp. at 1.  Not so.  On November 11, 2021, not long after the Court entered the MTD Order, Defendants and the Court were informed of the death of then-lead plaintiff Billy White, ECF No. 78, which necessarily paused this case until a new lead plaintiff appointment process could be conducted, a new lead plaintiff appointed, and the new lead plaintiff's selection of counsel approved.  On November 17, 2021, less than a week later, Defendants informed the Court in a Joint Case Management Statement that they "expect[ed] to file appropriate motions challenging the sufficiency of the operative complaint."  ECF No. 80 at 2; *see* ECF No. 66 at 3 (similar previous notice).  But without a lead plaintiff, lead plaintiff counsel, or even certainty as to an operative complaint, Defendants could not file Rule 12(c) motions at that time.

On November 9, 2022, a year later, the Court appointed plaintiff Chicago & Vicinity Laborers' District Council Pension Fund (the "Fund") and approved the Fund's selection of Robbins Geller Rudman & Dowd LLP as lead counsel.  ECF No. 113.  On November 29, 2022, the Fund filed a Supplement to the Amended Complaint.  ECF No. 116.  It was not until that date that a lead plaintiff, lead plaintiff's counsel, and a post-appointment operative complaint were determined, allowing Defendants to file their Rule 12(c) motions.  Defendants did so on December 22, 2022, three weeks later.  ECF Nos. 117, 119.

The filing of the Rule 12(c) motion activated the automatic stay provisions of the Private Securities Litigation Reform Act ("PSLRA"). *See* 15 U.S.C. § 78U-4(B)(3)(b); *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 968 & n.11 (9th Cir. 2014) (for PSLRA stay, a motion for judgment on the pleadings is the functional equivalent of a motion to dismiss) (citing *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); *Gardner v. Major Auto. Cos.*, 2012 WL 1230135, at *4 (E.D.N.Y. Apr. 12, 2012) ("a Rule 12(c) motion is a 'motion to dismiss' within the meaning of the PSLRA automatic stay provision, and . . . therefore the stay is triggered by defendants' Rule 12(c) motion."). Far from seeking a protracted delay of discovery, Defendants sought to hasten a decision on the Rule 12(c) motions and limit the length of the discovery stay by negotiating a short briefing schedule that allowed them only two weeks to file their replies in support of the motions and noticed the motions for a hearing on February 23, 2023. (The Court subsequently set the hearing for March 16, 2023, ECF No. 123). Moreover, contrary to Plaintiff's contention that Defendants "refused to respond" to Plaintiff's document requests, Opp. at 1, Defendants served <u>full</u> responses and objections to those requests, including the application of the PSLRA discovery stay among their objections. ECF No. 124-1.

## C. THE COMPLAINT FAILS TO PLEAD THAT THE APRIL 26, 2018 OR FEBRUARY 20, 2020 STATEMENTS WERE FALSE OR MISLEADING

### 1. Defendants' Rule 12(c) Motion Does Not Create Issues of Fact

Contrary to Plaintiff's contentions, Defendants' Rule 12(c) motion does not create any factual questions. The parties do not dispute the public statements at issue. To make a determination about Plaintiff's allegations of concealment of post-enrollment member costs during the April 26, 2018 and February 20, 2020 earnings calls, the Court need only look to the Company's public disclosures, that is, the entire transcript of these earnings calls, the SEC filings and press release referenced therein and other contemporaneous SEC filings available to investors – the accuracy and content of which Plaintiff does not dispute. *See* Mot. at 11-14 (showing that these documents contained statements regarding ASC 606, operational costs, and/or customer care

efforts and expenses).[3]

Regardless, Plaintiff's argument that "numerous outstanding questions of fact," Opp. at 6, preclude judgment on the pleadings is misguided because, for purposes of Rule 12(c), well pled allegations are taken as true. *See Heliotrope*, 189 F.3d at 979 (judgment on the pleadings is appropriate "when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."); *City of Almaty, Kazakhstan v. Ablyazov*, 2019 WL 1430155, at *3 (S.D.N.Y. Mar. 29, 2019) ("rejecting" plaintiffs' argument "that the existence of disputed facts precludes judgment on the pleadings" as "not the correct framework").

Plaintiff also argues that SEC filings not specifically referenced in the earnings calls should not be considered. Opp. at 8, 9-10. While the key SEC filings (the same-day press releases) certainly were specifically referenced, it is well established that courts should consider alleged misstatements in their <u>full</u> context, including statements made in other publicly filed documents, to ascertain whether they materially altered the total mix of information for investors. *See, e.g.*, *In re LifeLock, Inc. Sec. Litig.*, 690 F. App'x. 947, 951 (9th Cir. 2017) (affirming dismissal where a reasonable investor would not view those facts as changing the "total mix" of information available"); *Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) ("Plaintiffs' omissions theory fails . . . because the Defendants clearly disclosed material information to investors."); *McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143, at *12 (N.D. Cal. Aug. 7, 2019) ("Aerohive disclosed what Plaintiffs allege Aerohive omitted"); *supra* at 2 & footnote 2 (cases showing alleged misstatement or omission must be viewed in context). Indeed, the Ninth Circuit has found that in a fraud on the market case (such as this one), even

---

[3] Plaintiff's cases involve vastly different facts. *McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005) concerned the violation of plaintiff's constitutional rights and did <u>not</u> involve a Rule 12(c) motion. *Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, 1054 (S.D. Cal. 2019), was a retaliation whistle-blower case where the court denied plaintiff's Rule 12(c) motion based on alleged lack of specificity because it found that the defendant's pleading was sufficiently specific to allege fraud. In *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 939-40 (N.D. Cal. 2022), this Court found that reasonable minds could differ as to whether the statement that the company had "kind of put a freeze on hiring" sufficiently disclosed that a hiring freeze had been implemented when defendants also conveyed positive information that the company was hiring sales employees. Unlike in *Splunk*, eHealth's disclosures of its operational and CC&E expenses were not qualified by any "kind of" or other equivocal language.

statements about the issuer made by <u>third parties</u> can inform the investing public. *See In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1115 (9th Cir. 1989) ("We conclude that in a fraud on the market case, the defendant's failure to disclose material information may be excused where that information has been made credibly available to the market by other sources.").

**2.    Defendants Disclosed eHealth's Operational Expenses, Including Customer Care and Enrollment, During the April 2018 and February 202 Earnings Calls, and in SEC Filings Referenced Therein**

Defendants have shown that they contemporaneously disclosed—in both total dollars, dollars per-approved member, and as a percentage of revenue—the very CC&E expenses Plaintiff claims were concealed. Mot. at 3, 8-10. While Plaintiff admits that Defendants have provided the Court with "new" "additional statements" in their Rule 12(c) motion that were not presented to the Court in their Rule 12(b)(6) motion, Opp. at 8-9, Plaintiff either ignores them or describes them as "irrelevant." *Id*. at 7. Neither tactic is successful.

In its MTD Order, the Court declined to dismiss the alleged earnings calls misstatements regarding operational expenses because while eHealth "disclosed its operational expenses in SEC filings," the challenged statements "were made during an earnings call and <u>without reference to any SEC filings in which Defendants disclosed operational expenses</u>[.]" MTD Order at 16 (emphasis added). Defendants now include the pages of those two earnings calls that <u>point investors to eHealth's SEC filings</u>, particularly the Company's <u>press releases</u> filed on Form 8-K the <u>same day as the respective earnings call</u>. Ex. 1 at 4, Ex. 4 at 4. These press releases were not provided to the Court in connection with the Rule 12(b)(6) motion.

Far from being "blatantly misleading," Opp. at 8, the Company's April 26, 2018 press release provided investors with information not contained in the 2017 10-K. It provided total 1Q18 CC&E expenses of $13.2 million, 1Q18 CC&E expenses of $350 per Medicare Advantage-equivalent member, and disclosed that 1Q18 GAAP CC&E expenses were 31% of 1Q18 revenue. Ex. 2 at 8, 18, 19; Mot. at 9. The same is true for the Company's February 20, 2020 press release which provided the same information for 4Q18 and FY18. Ex. 5 at 10, 21, 22; Mot. at 10. Providing this (and other) information, missing in the record before the Court on the Rule 12(b)(6) motion, is far from irrelevant. It is "appropriate" for the Court to consider this new information

that places the alleged omissions "in [their] full context[.]" *Omnicare*, 575 U.S. at 190-91; *id.* at 190 (investor considers a statement, "whether of fact or of opinion," in the context of other available information). This information shows that investors could not have been misled due to the Company's ample disclosures of operational and CC&E expenses. *See, e.g.*, *Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1133 (9th Cir. 2004) (cautionary language in 10-K protected forward-looking statements in earnings call that pointed to the 10-K for more information); *Apple Computer*, 886 F.2d at 1115 (even statements about the issuer made by sources other than the issuer can inform the investing public); *see also supra* at 2 & footnote 2 (citing authority that alleged misstatements should be viewed in context).

> **3.    The Complaint Fails to Allege Facts Showing That eHealth Incurred Material Post-Enrollment Retention Expenses**

The allegedly concealed operational expenses were post-enrollment member retention expenses. ¶¶ 73, 75-76, 92-93. As Defendants showed, the Complaint fails to plead the amount of these retention expenses, let alone specific facts showing that such expenses were material. Mot. at 11. Neither does the Opposition. Plaintiff merely points to the amount of operational expenses and CC&E expenses (Opp. at 11), which Defendants disclosed. Mot. at 8-10; *supra* at 8-9. Plaintiff, therefore, improperly invites the Court to "speculate" as to the "severity" of the post-enrollment member retention expenses. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999); *see* Mot. at 11 (citing cases). Since member retention expenses are "a percentage of Customer Care and Enrollment" expenses disclosed by Defendants (¶ 58) throughout the class period, their omission could not have been material. *See In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *7 (N.D. Cal. Oct. 21, 2020) (holding that omission of the user conversion number, which "was captured by the total number of paid users, a metric regularly disclosed by Dropbox," did not "create a materially different impression of Dropbox's financial health").

> **4.    The Statements Were Not Misleading Because They Were Made From an Accounting Perspective in the Context of ASC 606 and Revenue Recognition**

The Opposition neither disputes that accounting terminology was used during the April 26, 2018 and February 20, 2020 earnings calls nor points to specific <u>facts</u> to support any plausible

interpretation that the statements were not made in the context of ASC 606. Instead, Plaintiff claims that the new submitted materials do not "clarify that ASC 606 is [Defendants'] sole basis for understanding the health of [eHealth's] business and the impact of operational expenses on revenue," which was the "basis for the Court's [MTD] Order." Opp. at 13. Setting aside the nonsensical nature of this claim, because ASC 606 naturally would <u>not</u> be the "sole basis" on which Defendants "underst[oo]d the health" of eHealth's business, the actual "basis for the Court's Order" was that Defendants "have not pointed to any material" in connection with the 12(b)(6) motion "that would allow the Court to infer that" the "statements were made in the context of the mechanics of revenue recognition under ASC 606." MTD Order at 15. The Rule 12(c) motion now provides that information to the Court. *See* Mot. at 11-14; Ex. 1 at 5, 7, 9; Ex. 8 at 15-16; Ex. 4 at 13. While Plaintiff faults the new information as not expressly "limit[ing]" the statements to the mechanics of revenue recognition under ASC 606 (Opp. at 13), it is not required. The materials provide <u>context</u> showing that the statements were made from the perspective of revenue recognition mechanics under ASC 606. Finally, Plaintiff resorts to its "creates a factual dispute" argument (*id.*), which is without merit. *See* Section II.C.1. Courts routinely assess the context of alleged misstatements at the pleading stage. *See supra* at 2 & footnote 2.

**D.    THE COMPLAINT FAILS TO ALLEGE SCIENTER IN CONNECTION WITH THE APRIL 26, 2018 AND FEBRURY 20, 2020 STATEMENTS[4]**

Instead of addressing Defendants' new and powerful scienter arguments, Plaintiff attempts to sidestep them. Opp. at 16-17. Defendants argued that the allegation that they fraudulently hid the existence of operational expenses and CC&E expenses in earnings calls is implausible because <u>Defendants repeatedly disclosed operational expenses and CC&E expenses during the very same</u> <u>earnings calls, in same-day earnings press releases filed with the SEC on Form 8-K, and in other</u> <u>SEC filings before and after those earnings calls</u>. Mot. at 8-10, 14-15. The Opposition does not

---

[4] Because Plaintiff has "not adequately pled that [the April 26, 2018 and February 20, 2020 Statements] were actually false or misleading, . . . it follows the Plaintiff[] ha[s] not adequately pled facts from which one can infer that Defendants knew their statements [were] false or misleading." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1068 (N.D. Cal. 2012).

address this argument. Instead, it responds that the MTD Order found Plaintiff's scienter allegations plausible. Opp. at 16. The Court, however, did not have the complete record of Defendants' disclosures or the opportunity to consider this argument when it issued the MTD Order. Mot. at 2-4; *supra* at 8-9. Plaintiff also contends that this argument "creates a dispute of fact[.]" Opp. at 16. But there are not contested facts in this argument; it relies solely upon Defendants' uncontested public disclosures.[5] A core operations inference that Defendants were aware of these operational expenses does not refute Defendants' argument, which shows that Defendants disclosed what Plaintiff alleges they knew but hid from investors.

Another deficiency is Plaintiff's failure to plead specific, undisclosed contemporaneous facts or conditions known to Defendants that contradicted the statements. Mot. at 15. The Opposition points to no such allegations, but instead (again) responds that this argument "creates a question of fact[.]" Opp. at 17. But Defendants' argument relies on the Complaint's absence of factual allegations, and therefore could not create factual disputes unresolvable on a Rule 12(c) motion. To the extent Plaintiff argues that a core operations inference provides these missing allegations, they are incorrect, Mot. at 15, particularly when Defendants repeatedly disclosed operational and CC&E expenses throughout the class period. It would not be "absurd" for senior executives to be aware of operational and CC&E expenses without knowing post-enrollment operational expenses devoted to customer retention, a subset of those expense figures. *Id*. at 15-16.[6]

---

[5] Securities fraud cases are frequently dismissed at the pleading stage because the allegations were deemed implausible. *See, e.g., Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020) ("Allegations that are implausible do not create a strong inference of scienter."); *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1107 (9th Cir. 2021) (complaint "[d]id [n]ot [p]lead a [p]lausible [t]heory of Defendants' [m]otive"; theories were "divorced from common experience"); *Carr v. Zosano Pharma Corp.*, 2021 WL 3913509, at *10 (N.D. Cal. Sept. 1, 2021) (scienter allegations "are implausible as a matter of law and cannot survive a motion to dismiss").

[6] The "absurdity" prong of the core operations doctrine is limited to "rare circumstances." *S. Ferry LP No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008). Defendants are aware of only two instances in which the Ninth Circuit has applied it. *See Reese v. Malone*, 747 F.3d 557, 576-77 (9th Cir. 2014) (absurd to suggest BP-Alaska's SVP and Greater Prudhoe Bay Performance Unit Leader tasked with overseeing pipeline operations were unaware of pipeline conditions and inspection data), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 984, 988 n.5 (9th Cir. 2008) (absurd to suggest that executives were unaware of

(continued...)

**E.    THE COMPLAINT FAILS TO ALLEGE LOSS CAUSATION**

The Complaint fails to allege that the April 26, 2018 and February 20, 2020 operational expense statements caused an artificial inflation in eHealth's stock price during the class period or that a subsequent corrective disclosure about operational expenses caused a decline in eHealth's stock price and Plaintiff's alleged losses.  Mot. at 17-18; *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) ("in order to establish loss causation, the market must learn of and react to those particular practices themselves.") (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008)).  The Opposition does not refute this fatal deficiency.

*First*, the Opposition cites only to paragraph 143 of the Complaint, Opp. at 18, which is a general boilerplate averment alleging that "Defendants' materially misleading statements and omissions during the Class Period resulted in Plaintiff and the other Class members purchasing eHealth's shares at artificially inflated prices."

*Second*, the Opposition ignores that Plaintiff's only specific loss causation allegations pertain to churn and accounting-related statements, which have been dismissed with prejudice. *See* ¶ 144 (c), (e), (b) (alleging Defendants' "conceal[ment of] risks associated with member churn and accounting violations" and the materialization of "risks associated with exposure arising from eHealth's member churn" "caus[ed] eHealth's shares to be overvalued and the market price of eHealth's shares to be artificially inflated"); ¶ 146 (alleging Defendants "failed to disclose . . . material information concerning its member churn and accounting practices"); ¶ 46 (alleging "eHealth concealed the increased member churn," which created a "false impression of eHealth's operational and financial strength prompt[ing] a meteoric rise in the price of its stock").  The Complaint's loss causation allegations do not mention operational expenses at all.

*Third*, unlike Plaintiff's case law, Opp. at 18, Defendants do not argue that hidden operational expenses and their subsequent revelation must be the "sole reason" for investors' losses

---

issuance of company-wide "stop-work orders" by a client accounting for 80% of company's revenues).  Each time the "absurdity" prong has come before the Ninth Circuit, it has declined to infer scienter.  *See, e.g.*, *Local 353, I.B.E.W. Pension Fund v. Zendesk, Inc.*, 2022 WL 614235, at *2 (9th Cir. Mar. 2, 2022); *Prodanova*, 993 F.3d at 1111-12; *Webb v. Solarcity Corp.*, 884 F.3d 844, 854-56 (9th Cir. 2018); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009).

to plead loss causation, but instead correctly argue that the Complaint does not plead that undisclosed operational expenses were even a "substantial cause" of investors losses because the Complaint fails to allege <u>any</u> corrective disclosure.  Mot. at 17.  Neither the Complaint nor the Opposition points to a statement by the Company or in the Muddy Waters short-seller report disclosing eHealth's actual post-enrollment operational expenses for customer retention.

*Fourth*, even if the Muddy Waters report had disclosed this information (it only incorrectly stated that the Company "pretends that ongoing service needs, which carry real costs, do not exist," ¶ 57), it <u>cannot</u> constitute a corrective disclosure because it was authored by short-sellers who stood to profit from a decline in eHealth stock price and who disclaimed the accuracy or completeness of the report.  Mot. at 17 (citing *In re BofI Holdings, Inc. Sec. Litig.*, 977 F.3d 781, 797 (9th Cir. 2020)).  Plaintiff does <u>not</u> dispute any of these facts and their <u>pre</u>-*BofI* cases, Opp. at 19, are outdated.  Instead, Plaintiff argues that the Muddy Waters report provided "new information" (not so) and relied in part on non-public sources.  *Id*. at 20-21.  But Ninth Circuit law is clear: it is "<u>the character of the report – anonymous and self-interested short-sellers who disavowed any accuracy – [that] rendered it inadequate</u>." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 840 (9th Cir. 2022) (describing *BofI*'s "central holding") (emphasis added).[7]  This is true even if new information was provided.  *Id.* (finding that even assuming the short-seller "provide[d] new information to the market," the report nonetheless "was 'authored by anonymous short-sellers who had a financial incentive to convince others to sell, and . . . included disclaimers from the authors'" and "[a]s a result, it is not plausible that the market would perceive the [short-seller report] as revealing false statements because the nature of the report means that investors would have taken its 'contents with a healthy grain of salt.'") (quoting *BofI*, 977 F.3d at 797).  *BofI* and *Nektar* compel the finding that the Muddy Waters report was not a corrective disclosure.

_____

[7] *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714 (N.D. Cal. 2022), is not controlling and pre-dated *Nektar*, which reaffirmed and applied *BofI*'s "central holding" that the character of the short-seller report is decisive in the loss causation analysis.  Further, *QuantumScape* involved reports that were based either entirely or in part on experts in the relevant (technology battery) industry.  580 F. Supp. 3d at 727, 732 (the Seeking Alpha article was a republication of an article by an industry leader, who held a Ph.D. in material physics, and the Scorpion Capital Report relied on four "experts").  Here, the Muddy Waters report relied on <u>no</u> experts to support its suppositions about eHealth's member retention costs.

*Finally*, eHealth's July 23, 2020 earnings announcement does not save Plaintiff's deficient loss causation allegations. Opp. at 19 (citing ¶¶ 7, 62-65). Paragraph 7 of the Complaint alleges that the July 2020 announcement "confirmed substantive aspects of the 'member churn' allegations previously asserted in the Muddy Waters report," but churn allegations have been dismissed with prejudice. Paragraphs 62-65 allege that the announcement "validated" the short-seller report's conclusions on issues other than operating expenses, *i.e.*, churn, commission revenue recognition, member retention, and LTVs. The July 2020 announcement could not have been a corrective disclosure because it did not reveal that eHealth's operational expenses, including customer care costs, were any different than what it had previously disclosed. Mot. at 17. The Opposition fails to respond to this defect. Since eHealth disclosed CC&E expenses throughout the class period, it came as no surprise in July 2020 that eHealth engaged in member retention activities and incurred related costs. Mot. at 9-10 (citing exhibits).

Plaintiff is left with nothing more than the alleged stock price declines following the alleged two corrective disclosures. ¶¶ 6, 7. It is well-established, however, that "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).

## III.    CONCLUSION

For the foregoing reasons and those stated in their Motion, Defendants respectfully request that the Court grant their Rule 12(c) motion and enter judgment in their favor on the remaining claims arising from the challenged statements made on April 26, 2018 and February 20, 2020.

Respectfully submitted,

Dated: February 9, 2023

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

By: /s/ *Gregory L. Watts*
    Gregory L. Watts

GREGORY L. WATTS, SBN 197126
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:    (206) 883-2500
Facsimile:    (206) 883-2699
Email:        gwatts@wsgr.com

CATHERINE E. MORENO, SBN 264517
DYLAN G. SAVAGE, SBN 310452
BETTY CHANG ROWE, SBN 214068
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:    (650) 493-9300
Facsimile:    (650) 565-5100
Email:         cmoreno@wsgr.com
               dsavage@wsgr.com
               browe@wsgr.com

*Attorneys for Defendants eHealth, Inc., Scott N.
Flanders, and Derek N. Yung*